ROYI MOAS (State Bar No. 10686)
rmoas@wrslawyers.com
WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
3773 Howard Hughes Parkway, Suite 590
South Las Vegas, Nevada 89169
Telephone: (702) 341-5200
Facsimile: (702) 341-5300

SIMON ARON (CA State Bar No. 108183) (admitted pro hac vice)
saron@wrslawyers.com
ELSA M. HOROWITZ (CA State Bar No. 195689) (admitted pro hac vice)
ehorowitz@wrslawyers.com
WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
11400 West Olympic Boulevard, 9th Floor
Los Angeles, California 90064-1582
Telephone: (310) 478-4100
Facsimile: (310) 479-1422

Attorneys for Secured Creditor
LONE OAK FUND, LLC

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>2700 SLOAT HOLDINGS, LLC,<br><br>Debtor. | Case No. 25-50584-hlb<br><br>Chapter 11<br><br>**MOTION OF SECURED CREDITOR LOAN OAK FUND, LLC TO EXCUSE COMPLIANCE WITH TURNOVER OF CERTAIN REAL PROPERTY SUBJECT TO STATE COURT RECEIVERSHIP PURSUANT TO BANKRUPTCY CODE § 543(d); MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS IN SUPPORT OF THEREOF**<br><br>*[Notice of Hearing; Compendium of Exhibits; Request for Judicial Notice Filed Concurrently Herewith]*<br><br>Judge: Hon. Hilary L. Barnes<br><br><u>Hearing Information:</u><br>Date: September 9, 2025<br>Time: 2:30 p.m.<br>Place: Courtroom 2<br>C. Clifton Young Federal Building<br>300 Booth Street<br>Reno, NV 89509 |

**TO THE HONORABLE HILARY L. BARNES, UNITED STATES BANKRUPTCY JUDGE, DEBTOR AND HIS ATTORNEY OF RECORD, THE TWENTY LARGEST UNSECURED CREDITORS, AND THE OFFICE OF THE UNITED STATES TRUSTEE:**

Lone Oak Fund, LLC, a California limited liability company, the secured creditor herein ("Lone Oak"), hereby moves this Court (the "Motion") for entry of an order excusing compliance with 11 U.S.C. § 543(a) and (b) with respect to that certain real property located at 2700-2750 Sloat Boulevard, San Francisco, California 94116 (the "Property") that is currently in the possession and control of a State Court appointed receiver due to the material defaults by 2700 Sloat Holding, LLC (the "Debtor") under certain loan agreements and documents entered into with Lone Oak (which obligations are secured against the Property). Debtor's defaults include the failure to make mortgage payments, failure to pay off the subject loan at maturity (which as of the filing of this action **exceeds $11,500,000.00)**, failure to pay property taxes and failure to pay junior lender Aminam, LLC, a California limited liability company ("Aminam"), and failure to protect and preserve the Property from waste or loss.

This Motion is made and based upon 11 U.S.C. § 543(d) and upon the grounds that, as shown more fully by the declarations filed herewith, the relief requested herein is necessary for the following reasons: (i) to protect the Property from waste and injury; (ii) to ensure the continued maintenance, protection and day to day operations of the Property; (iii) to ensure the Property taxes are paid; (iv) to ensure that the Property remains adequately insured; (v) to ensure that the Property remains protected in the event the junior lender forecloses; (vi) to ensure the continued safety and well-being of the residents at the Property; and (vii) to protect Lone Oak's secured interest in the Property. As set forth more fully in the declarations, Debtor has mismanaged the Property and it is in the best interests of this estate, its creditors and the tenants of the Property to excuse the Receiver from complying with the turnover provisions of 11 U.S.C. § 543(a) and (b) and to authorize the Receiver to retain control and continue to operate the Property pursuant to 11 U.S.C.

§ 543(d).

Lone Oak further moves on the basis that it will be moving for relief from the automatic stay to complete its foreclosure sale presently and that excusing the Receiver under Section 543(d) on a temporary basis is warranted in order to maintain the status quo at the Property and avoid harm and prejudice to Lone Oak, other creditors and tenants.

The Motion is based upon the following Memorandum of Authorities and Declarations James Rothstein, Kevin Singer, Jackson Wyche and the Compendium of Evidence and Request for Judicial Notice filed concurrent herewith in support of the Motion, and on the pleadings and other papers on file in this Chapter 11 case of which this Court is requested to take judicial notice; and on such other and further oral and/or documentary evidence and argument as may be presented at or before the hearing on this Motion.

**WHEREFORE**, Lone Oak respectfully requests that the Court enter an order excusing the Receiver from complying with 11 U.S.C. § 543(a) and (b), authorizing the Receiver to remain in possession of the Property pursuant to 11 U.S.C. § 543(d), and for such other and further relief as is just under the facts and circumstances of this case.

DATED: August 11, 2025

WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP

By: *\/s/ Simon Aron*

SIMON ARON

Attorneys for Secured Creditor, Lone Oak Fund, LLC, a California limited liability company

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .......... 7
I. INTRODUCTION .......... 7
II. JURISDICTION .......... 9
III. STATEMENT OF FACTS/BACKGROUND .......... 9
A. THE LOAN, DEFAULT AND APPOINTMENT OF RECEIVER .......... 9
IV. BASIS FOR RELIEF REQUESTED .......... 15
A. THE COURT MAY ALSO EXCUSE THE RECEIVER'S COMPLIANCE ON A TEMPORARY BASIS .......... 18
V. CONCLUSION .......... 19
DECLARATION OF JAMES A. ROTHSTEIN .......... 20
DECLARATION OF KEVIN SINGER .......... 27
DECLARATION OF JACKSON WYCHE .......... 31

# TABLE OF AUTHORITIES

**Page**

## CASES

*In re Bryant Manor LLC*, 422 B.R. 278 (Bankr. D. Kan. 2010) .......... 17

*In re Dill*, 163 B.R. 221, 225 (E.D.N.Y. 1994) .......... 16

*In re Falconridge, LLC*, No. 07–bk–19200, 2007 WL 3332769 (Bankr. N.D. Ill. Nov. 8, 2007) .......... 17

*In re Foundry of Barrington Partnership*, 129 B.R. 550 (Bankr. N.D. Ill. 1991) .......... 17

*In re Lizeric Realty Corp.*, 188 B.R. 499 (Bankr. E.D.N.Y. 1995) .......... 16, 17

*In re Packard Square LLC*, 575 B.R. 768, 778 (Bankr. E.D. Mich. 2017) .......... 15

*In re Packard Square*, LLC, 586 B.R. 853 (E.D. Mich. 2018) .......... 15

*In re Picacho Hills Util. Co., Inc.*, No. 11-13-10742 TL, 2013 WL 1788298 (Bankr. D.N.M. Apr. 26, 2013) .......... 15

*In re Stratesec, Inc.*, 324 B.R. 156 (Bankr. D.C. 2004) .......... 18

*In re Wallace*, No. 11–21077–TLM, 2011 WL 5827623 (Bankr. D. Idaho Nov. 18, 2011) .......... 17

## FEDERAL STATUTES

11 U.S.C. § 101 *et seq.* .......... 7, 15

11 U.S.C. § 105(a) .......... 9

11 U.S.C. § 305(a) .......... 9

11 U.S.C. § 543 .......... passim

28 U.S.C. § 1334 .......... 9

28 U.S.C. § 1408 .......... 9

28 U.S.C. § 1409 .......... 9

28 U.S.C. § 157 .......... 9

**STATE STATUTES**

Cal. Civ. Code § 2938 .......... 11

**OTHER AUTHORITIES**

9 William L. Norton Jr. et al., *Norton Bankr. L. & Prac.* § 171:3 (3d ed. 2025) .......... 18

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

By its *Motion to Excuse Compliance with Turnover of Certain Real Property Subject to State Court Receivership Pursuant To Bankruptcy Code § 543(d)* (the "Motion"), Lone Oak Fund, LLC, a California limited liability company, the secured creditor herein ("Lone Oak"), seeks an order excusing compliance with Section 543(a) and (b) of 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code") with respect to that certain real property located at 2700-2750 Sloat Boulevard, San Francisco, California 94116 (the "Property"), which is owned by the chapter 11 debtor herein, 2700 Sloat Holding, LLC (the "Debtor").

The Property has been and is currently in the possession and control of a State Court appointed receiver (the "Receiver") based on the State Court finding that Lone Oak has met its burden of establishing a probability of prevailing on its claims and has shown that absent a preliminary injunction and appointment of a receiver, it would suffer irreparable harm and ongoing risk of loss and diminution in value of its interests in the Property.

Upon taking possession of the Property, the Receiver discovered that the Debtor had absconded with over $415,000 of rents paid in advance shortly after Lone Oak's loan had gone into default by reason of the Debtor's failure to pay real property taxes and monthly loan payments. Subsequently, the State Court ordered the Debtor and its principal, Raelynn Hickey ("Hickey") "to provide an explanation and accounting, supported by up-to-date financial statements, ledgers, invoices, or other supporting documentation, as to how the money … (e.g. the Prepaid Rents) was spent."[1]

The Debtor and Hickey utterly failed to provide a satisfactory accounting or

---

[1] *See,* Lone Oak's Request for Judicial Notice (the "RJN") filed concurrently herewith, **Ex. "H"**.

explanation and, on June 12, 2025, the State Court was prepared to rule:

> *Receiver's Motion is GRANTED. Defendant has not complied with the Court's May 22, 2025 order or the order appointing Receiver. Defendant is ordered to turnover the rental income and prepaid rents sought in the Receivers Motion. To the extent that Defendant no longer possesses those funds, Defendant is ordered to pay the Receiver the amount that they received in rental income and prepaid rents on November 1, 2024 and December 30, 2024.*

Declaration of Jackson Wyche ("Wyche Decl.") filed concurrently herewith, ¶ 15.

Debtor has little, if any, equity in the Property and was facing imminent foreclosure by Lone Oak immediately prior to the filing of this case. Debtor's recently filed Schedules and Statement of Financial Affairs (the "Schedules" and "SOFA ", respectively) show that the Debtor is either attempting to defraud this Court or completely unhinged from reality. The Schedules list the value of the Property at $44,000,000, which is pure fantasy. The Debtor's later filed Schedule D further states that the debts secured by Property include mortgage holders Lone Oak and Aminam, LLC ("Aminam" or "Junior Lender") along with the San Francisco Tax Collector in the amount of $107,000.00.[2] Schedule D lists Aminam as being owed $600,000 pursuant to a junior Deed of Trust against the Property. The true facts are that Aminam is owed in excess of $2,600,000.00. *See,* RJN **Ex. "D"** and Declaration of James A. Rothstein ("Rothstein Decl."), ¶ 23. In addition, the Receiver as well as Lone Oak are informed and believe that the value of the Property does not exceed the total amount of the debts secured thereby. *See,* Rothstein Decl., ¶ 24.

Finally, the rents to be generated by the Property starting September of 2025 are insufficient to cover the taxes, mortgage debtor and operating expenses and are Lone Oak's cash collateral, and Debtor has no other funds with which to pay the ongoing operating expenses or reorganize. *See,* RJN **Ex. "A"**, p. 2.

Relief under Section 543(d) is necessary and appropriate in order to: (i) protect the Property from waste and injury; (ii) ensure the continued maintenance, protection and day to day operations of the Property; (iii) ensure the Property taxes are paid; (iv) ensure that

[2] RJN **Ex. "B"**.

the Property remains adequately insured; (v) ensure that the Property remains protected in the event the junior lender forecloses; (vi) ensure the continued safety and well-being of the residents at the Property; and, (vii) protect Lone Oak's secured interest in the Property. Accordingly, it is respectfully requested that the Court enter an order excusing the Receiver from complying with 11 U.S.C. § 543(a) and (b), authorizing the Receiver to remain in possession of the Property pursuant to 11 U.S.C. § 543(d), and for such other and further relief as is just.

## II.

## JURISDICTION

This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein are sections 105(a), 305(a) and 543(d) of the Bankruptcy Code.

## III.

## STATEMENT OF FACTS/BACKGROUND

### A. THE LOAN, DEFAULT AND APPOINTMENT OF RECEIVER

1. The Property consists of an 8,000 square foot retail building on a combined 38,095 square foot lot. The Property has been leased to third parties, who should have been paying the amount of $34,326.92 per month and which monthly rents are expected to increase to above $45,000.00 in August, 2025. None of the rents were being used to pay the amounts due and owing to Lone Oak, for property taxes or for the maintenance or preservation of the Property.

2. On or about July 29, 2022, Lone Oak loaned Debtor $10,000,000.00 (the "Loan"). The Loan is evidenced by a loan agreement (the "Loan Agreement") and promissory note, each dated July 29, 2022 (the "Note"). The Note was entered into between Lone Oak, on the one hand, and Debtor on the other hand and performance was required by the parties in the Cities of Los Angeles and San Francisco. The Note was executed by Hickey as Manager of Managing Member for Debtor. A true and correct copy

of the Note is attached as **Ex. "1"** to the Compendium of Evidence filed concurrently herewith and is incorporated herein by this reference.

3. The Note provided for payments from Debtor to Lone Oak of $53,333.33 per month (which was the amount equal to all accrued yearly interest divided by twelve) on the first (1st) day of each month commencing on September 1, 2022, through July 31, 2023, and then $57,500.00 per month (which was the amount equal to all accrued yearly interest divided by twelve) commencing on August 1, 2023, through July 31, 2024 (extended maturity date), and then $74,166.66 per month (which was the amount equal to all accrued yearly interest divided by twelve) commencing on August 1, 2024, through January 31, 2025 (extended maturity date). *Id.*

4. The Loan is secured by a Deed of Trust With Absolute Assignment of Leases and Rent, Security Agreement and Fixture Filing (the "Deed of Trust") in a **first position** recorded against the Property. The Deed of Trust was recorded on August 3, 2022, as instrument number 2022075367 in the San Francisco County Recorder's Office. The Deed of Trust was executed by Hickey as Manager of Managing Member for Debtor. A true and correct copy of the Deed of Trust recorded in the San Francisco County Recorder's Office is attached as **Ex. "C"** to the RJN and is incorporated herein by this reference.

5. The Property is also encumbered by a junior position Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Junior DOT") recorded in a second position against the Property on August 3, 2022, as instrument number 2022075368 in the San Francisco County Recorder's Office and in favor of Aminam. The Junior DOT secures a loan in the amount of $3,000,000.00 made to Debtor. A true and correct copy of the Junior DOT recorded in the San Francisco County Recorder's Office is attached as **Ex. "D"** to the RJN and is incorporated herein by this reference.

6. The Deed of Trust provides that all rights to receive rentals, income, receipts, issues and profits from the Property has been assigned to Lone Oak. [See, RJN **Ex. "C"** Article 1, Section 1.1, pg. 2]

7. The Deed of Trust further provides, pursuant to *California Civil Code* § 2938 for the appointment of a receiver to take possession of and manage the Property and to collect all rents therefrom upon application of Lone Oak. In particular, Lone Oak shall have the right to "apply to a court of competent jurisdiction for and obtain appointment of a receiver of the Property as a matter of strict right without regard to the adequacy of the security for the repayment of the Secured Obligations, the existence of a declaration that the Secured Obligations are immediately due and payable, or the filing of a notice of default, and Trustor hereby consents to such appointment;" [See, RJN **Ex. "C"** Article 4, Section 4.2 subdiv. (d), pgs. 10-11].

8. On December 28, 2023, Lone Oak and the Debtor entered into a Loan Modification Agreement (the "1st Loan Modification") whereby the maturity date was extended to July 31, 2024. On January 16, 2024, Lone Oak and the Debtor entered into another Loan Modification Agreement (the "2nd Loan Modification") wphereby the maturity date was extended to July 31, 2024. On July 2, 2024, Lone Oak and the Debtor entered into yet another Loan Modification Agreement (the "3rd Loan Modification") whereby the maturity date was extended to October 31, 2024. On October 7, 2024, Lone Oak and the Debtor entered into yet another Loan Modification Agreement (the "4th Loan Modification") whereby the maturity date to January 31, 2025. Rothstein Decl., ¶ 7.

9. Lone Oak has performed all conditions and obligations on its part under the Note and Deed of Trust and other Loan documents. Rothstein Decl., ¶ 8.

**Defaults**

10. Debtor failed to pay property taxes for the Property, which came due on November 1, 2024, in the total amount of $53,933.34, and which remain presently due and owing together with penalties thereon. True and correct copies of the tax bills are collectively attached as **Ex. "2"** to the Compendium of Evidence and are incorporated herein by this reference.

11. Since at least December 1, 2024, Debtor have been in default of the Loan documents (including without limitation, the Deed of Trust, Note, Loan Agreement, 1st

Loan Modification, 2nd Loan Modification, 3rd Loan Modification, and 4th Loan Modification) by among other things, failing to pay the monthly interest payments (namely, the $74,166.67 interest only payment due on January 1, 2025 and related charges), and any payments thereafter.

12. The Loan matured on February 1, 2025, and Debtor failed to pay off all amounts due thereunder despite demand.

13. Debtor was are also in default of the Junior DOT.

14. The second installment of real property taxes for the 2024-2025 tax year were due as of February 1, 2025 in the total amount of $53,933.34. Such taxes are last due without penalty on April 10, 2025, and the Debtor failed to pay the taxes due at that time. *See,* Compendium of Evidence, **Ex. "2"**.

15. Lone Oak declared a default under the terms of the Note and Deed of Trust and recorded its Notice of Default and Election to Sell Under Deed of Trust against the Property on February 12, 2025, as instrument number 2025011566 in the San Francisco County Recorder's Office, a copy of which is attached to the RJN as **Ex. "E"** and incorporated herein by this reference.

**Debtor Absconds with the Rents**

16. Shortly after Debtor defaulted on the Loan, Debtor collected from the Property's sole tenant, Sloat Garden Center ("Tenant"), prepaid rents for November 2024 through August 2025 in the amount of $415,584.59 (the "Prepaid Rents"). Declaration of Kevin Singer ("Singer Decl."), ¶ 6.

17. On February 26, 2025, the Receiver was appointed over the Property by the State Court. RJN **Ex. "F"**. The Tenant demonstrated to the Receiver that it delivered the Prepaid Rents to the Debtor so that there are no rents to be collected until September 1, 2025, and no funds with which to operate or maintain the Property. Singer Decl., ¶¶ 6-7.

18. The Receiver directed Debtor to turn over the Prepaid Rents, but Debtor has failed to do so, claiming that the Prepaid Rents were already spent. Despite repeated requests, Debtor refused to provide a full accounting for the Prepaid Rents or adequate

evidence demonstrating that they were actually consumed. Singer Decl., ¶ 8.

19. On April 29, 2025, the Receiver filed his *ex parte* application for the issuance of an order to show cause to the Debtor to turnover the Prepaid Rents, which application was set for hearing on May 22, 2025. RJN, **Ex. "G"**.

20. On May 29 2025, the State Court granted the Receiver's order to show cause requiring Debtor to show cause (the "OSC") why it should not be required to return the Prepaid Rents by: (1) providing an explanation and accounting supported by up-to-date financial statements, ledgers, invoices and other supporting documentation as to how the Prepaid Rents were spent; and (2) providing a declaration from Hickey supported by up-to-date documentation accounting for the expenditures made to Hartford Insurance, Pacific Workplaces, Jeffer, Mangels and Veriliant by May 29, 2025. The Receiver was ordered to submit a report regarding whether the Debtor's accounting is satisfactory by June 5, 2025. The OSC was set for hearing on June 12, 2025. RJN, **Ex. "H"**.

21. On June 5, 2025, the Receiver's filed his report to the State Court stating that the Debtor's "**purported 'accounting' is entirely unsatisfactory and the June 12, 2025 hearing remains necessary because [Debtor] has continued to defy the Court's orders.**" (Emphasis in original). RJN, **Ex. "I".** The Receiver continued: "No actual accounting was presented, and Defendant's Declaration largely reiterates prior arguments and attaches previously-provided exhibits, none of which directly address the disposition of the Prepaid Rents. The only novel evidence presented appears to confirm that at least $79,000 of the Prepaid Rents was directly transferred to Defendant's manager." (Footnote omitted). In footnote #2, the Receiver notes that Debtor failed to present an accounting of the expenditures made to Hartford Insurance, Pacific Workplaces or Jeffer, Mangels. *Id.*

22. Attached as **Ex. "J"** to the RJN is Hickey's Declaration filed May 29, 2025, with the State Court. As easily shown, Hickey identifies expenses paid, in some cases, years before she absconded with the Prepaid Rents. More unbelievable is her attachment of a monthly payment invoice from Lone Oak for $74,166.67 dated February 10, 2025, and Property Tax Bills which were never paid by Debtor.

23. On June 12, the State Court was prepared to rule:

> *Receiver's Motion is GRANTED. Defendant has not complied with the Court's May 22, 2025 order or the order appointing Receiver. Defendant is ordered to turnover the rental income and prepaid rents sought in the Receivers Motion. To the extent that Defendant no longer possesses those funds, Defendant is ordered to pay the Receiver the amount that they received in rental income and prepaid rents on November 1, 2024 and December 30, 2024.*

Wyche Decl., ¶ 15.

24. However, on and around May 30, 2025, the Debtor and Hickey requested a postponement of the hearing to July 3, 2025 to enter into a forbearance/extension agreement with Lone Oak. Rothstein Decl., ¶21, Compendium of Evidence **<u>Ex. "3"</u>**. Lone Oak and the Receiver agreed to postpone the hearing until July 3, 2025. RJN **<u>Ex. "K"</u>**. This turned out to be a ruse by the Debtor and Hickey as Hickey never responded and a voluntary petition under Chapter 11 of the Bankruptcy Code was filed on June 26, 2025. Rothstein Decl., ¶ 21.

25. In summary, it readily appears that none of the Prepaid Rents were applied to discharge all or any portion of the Note, property taxes due or for the care and maintenance of Property which puts the Property at risk and Lone Oak's security at risk of diminution in value.

26. Likewise, Debtor has not been servicing the Junior Lender debt, which is in excess of $2,600,000. Rothstein Dec., ¶ 23.

27. The actual value of the Property – at its highest and best use - is approximately less than $14,000,000.00 and not remotely close to the $44,000,000.00 value set forth under oath in the Debtor's Schedules. Rothstein Decl., ¶ 24.

28. Rents will finally come due again in September and the Debtor cannot be left to collect, account and properly expend such funds that should only be used to preserve and maintain the Property, pay taxes due thereon and provide adequate protection to Lone Oak.

29. Lone Oak's interest in the Property would be severely jeopardized: (a) due to Debtor's absconding with over $400,000 of the rents that should have been used to pay

taxes, the Loan and/or the Junior Lender; (b) due to Debtor's ongoing self-dealing and mismanagement in connection with the Property; and (c) by failing to maintain the status quo pending proceedings regarding Lone Oak's request for relief from the automatic stay and Debtor's chapter 11 case.

30. Accordingly, it is respectfully requested that this Court allow the Receiver, to be left in control of the Property to operate, preserve and maintain it in accordance with the existing State Court Order.

## IV.

## BASIS FOR RELIEF REQUESTED

A receiver in possession of property of the estate is a "custodian" as that term is defined in Bankruptcy Code § 101(11)(A). Section 543 of the Bankruptcy Code provides, in relevant part, as follows:

> (a) A custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property.
>
> ….
>
> (d) After notice and hearing, the bankruptcy court—
>
> (1) may excuse compliance with subsection (a), (b), or (c) of this section if the interests of creditors … would be better served by permitting a custodian to continue in possession, custody, or control of such property,…

The bankruptcy court has discretion under Section 543(d)(1) to excuse a state court receiver from his mandatory turnover obligation under § 543(b)(1). See *In re Picacho Hills Util. Co., Inc*., No. 11-13-10742 TL, 2013 WL 1788298, at *7 (Bankr. D.N.M. Apr. 26, 2013). *In re Packard Square LLC*, 575 B.R. 768, 778 (Bankr. E.D. Mich. 2017), aff'd sub nom. *In re Packard Square*, LLC, 586 B.R. 853 (E.D. Mich. 2018). A Debtor's interests are not a part of a court's consideration in determining whether or not a receiver should stay in possession pursuant to Section 543(d). *Id.* (a court "may excuse compliance … if the interests of creditors … would be better served by permitting a custodian to continue in

possession, custody or control of such property”).

> Despite the mandate of section 543(a) and (b), **section 543(d)(1) permits the bankruptcy court in its discretion to excuse a custodian’s strict compliance with the turnover provisions of section 543(a) and (b), “if the interest of creditors would be better served by permitting the custodian to continue in possession of the property…**[Citation omitted].

*In re Dill*, 163 B.R. 221, 225 (E.D.N.Y. 1994). As further detailed in *In re Dill,* in exercising its discretion under § 543(d)(1), Courts may consider certain factors indicative of whether the interests of the creditors would be better served if the custodian (receiver) remains in possession of a debtor’s property.

> These factors have evolved to include: (1) whether there will be sufficient income to fund a successful reorganization; (2) whether the debtor will use the turnover property for the benefit of the creditors; (3) whether there has been mismanagement by the debtor; (4) whether or not there are avoidance issues raised with respect to property retained by a receiver, because a receiver does not possess avoiding powers for the benefit of the estate; and (5) the fact that the bankruptcy automatic stay has deactivated the state court receivership action. *See Constable Plaza Associates,* 125 B.R. at 103–04 (citing cases); *In re Northgate Terrace Apartments, Ltd.,* 117 B.R. 328, 332 (Bankr.S.D.Ohio 1990); *Powers Aero Marine Services,* 42 B.R. at 544–45; *In re CCN Realty Corp.,* 19 B.R. 526, (Bankr.S.D.N.Y.1982). The interests of the debtor, however, are not part of the criteria considered when applying section 543(d)(1). *See 4 Collier on Bankruptcy,* ¶ 543.05 at 543–12 (15th Ed.1993) (“section 543(d)(1) does not require an analysis of the interests of the debtor”).

*Id.,* 163 B.R. at 225. *See, also, In re Lizeric Realty Corp.*, 188 B.R. 499, 506-7 (Bankr. E.D.N.Y. 1995)(“The following factors are relevant to that determination: 1) whether there will be sufficient income to fund a successful reorganization; 2) whether the debtor will use the property for the benefit of its creditors; 3) whether there has been mismanagement by the debtor; and 4) whether there are preferences which a receiver is not empowered to avoid.”).

In the present case, the likelihood of an effective reorganization and the probability of funds being available for a reorganization are very remote. Secured claims exceed $14,000,000.00 and the income generated by the Property is insufficient to service taxes, insurance and mortgage debt. As attested to by the Debtor in its Schedules and SOFA, it had $24.39 in its pre-petition bank account, no other assets, no monthly income and monthly expenses of $83,951.82 [RJN **<u>Ex. “A”</u>**, pp. 2-9, 16] and has received no income

in nine (9) months [RJN **Ex. "A"**, p. 18]. More importantly, as described above, there are numerous instances of mismanagement by the Debtor, including absconding with the Prepaid Rents, and turnover would be prejudicial to all creditors, including Lone Oak, as well as to the tenants of the Property.

Bankruptcy courts have excused compliance with § 543(a) or (b) in situations such as this case. For instance, in *In re Lizeric Realty Corp.*, *supra,* 188 B.R. 499 (a State court appointed receiver of rents and profits of Chapter 11 debtor's building would be excused from turning over building to debtor upon commencement of debtor's Chapter 11 case, given debtor's previous mismanagement of building, including debtor's default under two mortgages, failure to pay taxes, and permitting liens to filed against building, and debtor's failure to pay its franchise taxes causing it to forfeit its charter); in *In re Foundry of Barrington Partnership*, 129 B.R. 550 (Bankr. N.D. Ill. 1991)(a receiver was excused from compliance with Section 543(b) where debtor had mismanaged property and engaged in self-dealing to the detriment of creditors); in *In re Wallace*, No. 11–21077–TLM, 2011 WL 5827623, at *9 (Bankr. D. Idaho Nov. 18, 2011)(court found that rental income or equity in the properties was not sufficient to cover taxes, maintenance and service the secured claims on the respective properties; therefore, property was not necessary for an effective reorganization, court was not convinced that debtors would use the rental income for the benefit of their creditors, and court concluded that "the interests of creditors would be served by permitting the receiver to continue in possession, custody, and control of the … properties and rents"); *In re Falconridge, LLC*, No. 07–bk–19200, 2007 WL 3332769, at *6-7 (Bankr. N.D. Ill. Nov. 8, 2007)(in granting the secured creditor's motion to excuse compliance with Section 543(d), court stated that "evidence of mismanagement or questionable business practices by the Debtor may negate the statutory obligation of a custodian to turnover assets to a debtor in bankruptcy" and found that, in considering the motion, "the paramount and sole concern is the interests of *all* creditors"); *In re Bryant Manor LLC*, 422 B.R. 278 (Bankr. D. Kan. 2010)(court kept receiver in place in 100-unit apartment complex case where court found that secured lender was undersecured, the

secured lender's vote could block confirmation of a plan, the debtor was $24,000 in arrears on utility payments at the time the receiver took possession of the property and the property was mismanaged prior to the receivership).

Given the Debtor's active and ongoing mismanagement which has and continues to damage the Property and all creditors, this Motion should be granted and the Receiver excused from complying with Subsection (b) of Section 543.

## A. <u>THE COURT MAY ALSO EXCUSE THE RECEIVER'S COMPLIANCE ON A TEMPORARY BASIS</u>

"Under 11 U.S.C. § 543(d), the bankruptcy court may temporarily permit a receiver to remain in place while the court decides whether to abstain to the receivership proceeding, or instead require the receiver to turn over the property of the estate to the trustee (or to the debtor-in-possession, if no trustee has been appointed)." *In re Stratesec, Inc.*, 324 B.R. 156, 157 (Bankr. D.C. 2004). Likewise, "Congress expressly provided that assignment proceedings may, and in some circumstances must, continue even after a bankruptcy filing. In addition, Congress has recognized that **it may be appropriate for a bankruptcy court to abstain from asserting jurisdiction in favor of a state assignment proceeding if it would better serve the interests of creditors and the debtor**." (Emphasis added) 9 William L. Norton Jr. et al., *Norton Bankr. L. & Prac.* § 171:3 (3d ed. 2025).

Here, the Debtor has filed inaccurate, if not blatantly false, Schedules and the sworn statement in the SOFA attests that it has had no income in 2025. The Debtor's 341(a) meeting is set for August 4, 2025. Lone Oak is moving for relief from the automatic stay. However, it is likely that Lone Oak, another creditor or even the United States Trustee would also seek to dismiss the Debtor's case or alternatively have the Court abstain. In order to fully consider these matters, the Court can and should temporarily excuse the Receiver from complying with Section 543(b) until after the Debtor's meeting of creditors has been completed and any motions by Lone Oak, other creditors or the U.S. Trustee are heard and decided.

## V.

## CONCLUSION

Based on the above and the accompanying declarations filed herewith, Lone Oak hereby respectfully requests that Court enter an order:

(1) pursuant to 11 U.S.C. § 543(d)(1) excusing the Receiver from turning over the Property to the Debtor since it is in the best interests of creditors and the interests of the Debtor's creditors would be better served through the continuation of the aforementioned State Court Action; and

(2) granting such other and further relief as is deemed just and proper.

DATED: August 11, 2025

WOLF, RIFKIN, SHAPIRO,
SCHULMAN & RABKIN, LLP

By: *_/s/ Simon Aron_*
SIMON ARON
Attorneys for Secured Creditor, Lone Oak Fund, LLC, a California limited liability company

**<u>DECLARATION OF JAMES A. ROTHSTEIN</u>**

I, James A. Rothstein, declare as follows:

1. I am the president of Lone Oak Industries, Inc., a California corporation, which is a member and the manager of Lone Oak Fund, LLC, a California limited liability company ("<u>Lone Oak</u>"). Except as otherwise noted, I have personal knowledge of the facts set forth below and, if called as a witness, could and would competently testify thereto under oath. This declaration is being submitted in support of Lone Oak's Motion to excuse turnover by a receiver.

2. I am one of the custodians of the books, records, files and credit records of Lone Oak relating to the secured Loan to debtor 2700 Sloat Holdings, LLC ("<u>Debtor</u>"). Debtor executed the loan documents with Lone Oak. I recognize Raelynn Hickey's ("<u>Hickey</u>") signature from the various documents that she signed with Lone Oak. I have personally worked on said books, records, files and credit records, and I have personal knowledge of the following facts, or have gained knowledge from the business records of Lone Oak maintained by its employees in the ordinary course of its business at or near the times mentioned herein. I have personally communicated with Hickey. If called to testify in this action as to matters set forth in this Declaration, I could and would testify competently thereto.

**<u>The Property</u>**

3. The Property consists of an 8,000 square foot retail building on a combined 38,095 square foot lot. The Property has been leased to third parties, who should have been paying the amount of $34,326.92 per month and which monthly rents are expected to increase to above $45,000.00 in August, 2025. None of the rents were being used to pay the amounts due and owing to Lone Oak, for property taxes or for the maintenance or preservation of the Property.

4. On or about July 29, 2022, Lone Oak loaned Debtor $10,000,000.00 (the "<u>Loan</u>"). The Loan is evidenced by a loan agreement (the "<u>Loan Agreement</u>") and promissory note, each dated July 29, 2022 (the "<u>Note</u>"). The Note was entered into

between Lone Oak, on the one hand, and Debtor on the other hand and performance was required by the parties in the Cities of Los Angeles and San Francisco. The Note was executed by Hickey as Manager for Debtor. A true and correct copy of the Note is attached as **Ex. "1"** to the Compendium of Evidence filed concurrently herewith and is incorporated herein by this reference.

5. The Loan is secured by a Deed of Trust With Absolute Assignment of Leases and Rent, Security Agreement and Fixture Filing (the "Deed of Trust") in a **first position** recorded against the Property. The Deed of Trust was recorded on August 3, 2022, as instrument number 2022075367 in the San Francisco County Recorder's Office. The Deed of Trust was executed by Hickey as Manager for Debtor. A true and correct copy of the Deed of Trust recorded in the San Francisco County Recorder's Office is attached as **Ex. "C"** to the Request for Judicial Notice ("RJN") filed concurrently herewith and is incorporated herein by this reference.

6. The Property is also encumbered by a junior position Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Junior DOT") recorded in a second position against the Property on August 3, 2022, as instrument number 2022075368 in the San Francisco County Recorder's Office and in favor of junior lender, Aminam, LLC, a California limited liability company ("Aminam" or "Junior Lender"). The Junior DOT secures a loan in the amount of $3,000,000.00 made to Debtor. A true and correct copy of the Junior DOT recorded in the San Francisco County Recorder's Office is attached as **Ex. "D"** to the RJN and is incorporated herein by this reference.

7. On December 28, 2023, Lone Oak and the Debtor entered into a Loan Modification Agreement (the "1st Loan Modification") whereby the maturity date was extended to July 31, 2024. On January 16, 2024, Lone Oak and the Debtor entered into another Loan Modification Agreement (the "2nd Loan Modification") whereby the maturity date was extended to July 31, 2024. On July 2, 2024, Lone Oak and the Debtor entered into yet another Loan Modification Agreement (the "3rd Loan Modification") whereby the maturity date was extended to October 31, 2024. On October 7, 2024, Lone Oak and the

Debtor entered into yet another Loan Modification Agreement (the "4th Loan Modification") whereby the maturity date to January 31, 2025.

8. Lone Oak has performed all conditions and obligations on its part under the Note and Deed of Trust and other Loan documents.

**Defaults**

9. Debtor failed to pay property taxes for the Property, which came due on November 1, 2024, in the total amount of $53,933.34, and which remain presently due and owing together with penalties thereon. True and correct copies of the tax bills are collectively attached to the Compendium of Evidence as **Ex. "2"** and are incorporated herein by this reference.

10. Since at least December 1, 2024, Debtor have been in default of the Loan documents (including without limitation, the Deed of Trust, Note, Loan Agreement, 1st Loan Modification, 2nd Loan Modification, 3rd Loan Modification, and 4th Loan Modification) by among other things, failing to pay the monthly interest payments (namely, the $74,166.67 interest only payment due January 1, 2025 and related charges), and any payments thereafter.

11. The Loan matured on February 1, 2025, and Debtor failed to pay off all amounts due thereunder despite demand.

12. Debtor was/is also in default of the Junior DOT.

13. The second installment of real property taxes for the 2024-2025 tax year were due as of February 1, 2025 in the total amount of $53,933.34. Such taxes are last due without penalty on April 10, 2025, and the Debtor failed to pay the taxes due at that time. RJN **Ex. "2"**.

14. Lone Oak declared a default under the terms of the Note and Deed of Trust and recorded its Notice of Default and Election to Sell Under Deed of Trust against the Property on February 12, 2025, as instrument number 2025011566 in the San Francisco County Recorder's Office, a copy of which is attached to the RJN as **Ex. "E"** and incorporated herein by this reference.

**<u>Debtor Absconds with the Rents</u>**

15. On February 26, 2025, at the request of Lone Oak, the Superior Court for the County of San Francisco appointed Kevin Singer as receiver (the "<u>Receiver")</u> over the Property. RJN **<u>Ex. "F"</u>**.

16. The Receiver determined that, shortly after Debtor defaulted on the Loan, Debtor collected from the Property's sole tenant, Sloat Garden Center ("<u>Tenant</u>"), prepaid rents for November 2024 through August 2025 in the amount of $415,584.59 (the "<u>Prepaid Rents</u>"). As a result, there were no rents to be collected until September 1, 2025, and no funds with which to operate or maintain the Property.

17. The Receiver directed Debtor to turn over the Prepaid Rents, but Debtor has failed to do so and, despite repeated requests from the Receiver, Debtor refused to provide a full accounting for the Prepaid Rents or adequate evidence demonstrating that they were actually consumed.

18. On April 29, 2025, the Receiver filed his *ex parte* application for the issuance of an order to show cause to the Debtor to turnover the Prepaid Rents, which application was set for hearing on May 22, 2025. RJN **<u>Ex. "G"</u>**.

19. On May 29, 2025, the State Court granted the Receiver's order to show cause requiring Debtor to show cause (the "OSC") why it should not be required to return the Prepaid Rents by: (1) providing an explanation and accounting supported by up-to-date financial statements, ledgers, invoices and other supporting documentation as to how the Prepaid Rents were spent; and (2) providing a declaration from Hickey supported by up-to-date documentation accounting for the expenditures made to Hartford Insurance, Pacific Workplaces, Jeffer, Mangels and Veriliant by May 29, 2025. The Receiver was ordered to submit a report regarding whether the Debtor's accounting is satisfactory by June 5, 2025. The OSC was set for hearing on June 12, 2025. RJN **<u>Ex. "H"</u>**.

20. On June 5, 2025, the Receiver's filed his report to the State Court stating that the Debtor's "**purported 'accounting' is entirely unsatisfactory and the June 12, 2025 hearing remains necessary because [Debtor] has continued to defy the Court's**

**orders.**" (Emphasis in original). RJN **<u>Ex. "I"</u>**. The Receiver continued: "No actual accounting was presented, and Defendant's Declaration largely reiterates prior arguments and attaches previously-provided exhibits, none of which directly address the disposition of the Prepaid Rents. The only novel evidence presented appears to confirm that at least $79,000 of the Prepaid Rents was directly transferred to Defendant's manager."

21. On or around May 30, 2025, the Debtor and Hickey contacted Lone Oak requesting a postponement of the hearing on the Receiver's OSC to July 3, 2025, in order to enter into a forbearance/extension agreement with Lone Oak. Attached to the Compendium of Evidence as **<u>Ex. "3"</u>** is a true and correct copy of a email chain from Hickey to Lone Oak seeking a forbearance. Lone Oak and the Receiver agreed to postpone the hearing until July 3, 2025. RJN **<u>Ex. "K"</u>**. This turned out to be a ruse by the Debtor and Hickey as Hickey never responded and a voluntary petition under Chapter 11 of the Bankruptcy Code was filed on June 26, 2025.

22. In summary, it readily appears that none of the Prepaid Rents were applied to discharge all or any portion of the Note, property taxes due or for the care and maintenance of Property which puts the Property at risk and Lone Oak's security at risk of diminution in value.

23. Likewise, Debtor has not been servicing the Junior Lender debt, which is in excess of $2,600,000. On July 21, 2025, Ezri Namvar of Aminam confirmed to Lone Oak that the Junior Lender debt was between $2,600,000 and $2,650,000.

24. Based upon its highest and best use, the actual value of the Property is no more than approximately $14,000,000.00, which is not remotely close to the $44,000,000.00 value set forth under oath in the Debtor's Schedules. And, it is less than the combined debts of the San Francisco Tax Collector, Lone Oak and Aminam. Lone Oak commissioned an independent valuation from Colliers Investment Services in June 2025, which Broker Opinion of Value was received July 25, 2025.

25. As of July 31, 2025, the amounts due under the Note together with interest, advances, delinquency charges, costs and attorney's fees, all in an amount of

approximately $11,513,717.69, which is comprised of the following:

| | |
|---|---|
| $10,000,000.00 | Principal Payoff |
| $74,166.67 | Interest @ 8.90% 12/1-12/31/2024 ($2,472.2222/day): Due 1/1/2025 |
| $7,416.67 | 10% Late Fee for January 2025 Payment (@ 8.90%) |
| $74,166.67 | Interest @ 8.90% 1/1-1/31/2025 ($2,472.2222/day): Due 2/1/2025 |
| $7,416.67 | 10% Late Fee for February 2025 Payment (@ 8.90%) |
| $200,000.00 | Interest @ 24.00% 2/1-2/28/2025 ($6,666.6667/day): Due 3/1/2025 |
| $200,000.00 | Interest @ 24.00% 3/1-3/31/2025 ($6,666.6667/day): Due 4/1/2025 |
| $200,000.00 | Interest @ 24.00% 4/1-4/30/2025 ($6,666.6667/day): Due 5/1/2025 |
| $200,000.00 | Interest @ 24.00% 5/1-5/31/2025 ($6,666.6667/day): Due 6/1/2025 |
| $200,000.00 | Interest @ 24.00% 6/1-6/30/2025 ($6,666.6667/day): Due 7/1/2025 |
| $200,000.00 | Interest @ 24.00% 7/1-7/31/2025 ($6,666.6667/day): Due 7/31/2025 |
| $35,785.29 | Estimated Legal Fees and Costs through 7/31/2025 |
| $78,238.16 | Estimated Receiver Fees and Costs through 7/31/2025 |
| $36,193.56 | Estimated Foreclosure Fees and Costs through 7/31/2025 |
| $334.00 | Recording Substitution of Trustee and Full Reconveyance |
| **$11,513,717.69** | **Estimated Total Due 7/31/2025** |

26. Debtor has and continues to mismanage the business operations and affairs of the Property and is instead acting in the personal interests of Hickey and not in the best interests of the Property, Lone Oak, the Junior Lender or creditors.

27. Rents will finally come due again in September and the Debtor cannot be left to collect, account and properly expend such funds that should only be used to preserve and maintain the Property, pay taxes due thereon and provide adequate protection to Lone Oak.

28. Lone Oak's interest in the Property would be severely jeopardized: (a) due to Debtor's absconding with over $400,000 of the rents that should have been used to pay taxes, the Loan and/or the Junior Lender; (b) due to Debtor's ongoing self-dealing and mismanagement in connection with the Property; and (c) by failing to maintain the status quo pending proceedings regarding Lone Oak's request for relief from the automatic stay and Debtor's chapter 11 case.

/ / /

/ / /

/ / /

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge

Executed July 30, 2025, at Los Angeles, California.

JAMES A. ROTHSTEIN

**DECLARATION OF KEVIN SINGER**

I, Kevin Singer, declare as follows:

1. I am the founder and President of Receivership Specialists, which specializes in both state and federal court receiverships (real estate and businesses), referee assignments, partition sales, real estate and business brokerage, and real estate consulting for Receiverships. If called as a witness in this matter, I could and would competently testify under oath as to the facts set forth herein based on personal knowledge.

2. In addition to having acted as a Court Receiver or Referee in more than 600 cases during the past 25 years, I have also acted as a Federal Court Trustee and Custodian. I am an eight-time participant and panelist in a California Receivers Forum Training Program in conjunction with Loyola Law School. I am a licensed California real estate broker, a licensed California general contractor, founder and former President of a diversified real estate company, and a former Government Affairs Director for a non-profit apartment association with more than 36,000 members. I am a past President and member of the Board of Directors for the California Receivers Forum and an Associate Publisher for *Receivership News*.

3. On February 26, 2025, the San Francisco County Superior Court, the Honorable Charles F. Haines presiding over case CGC-25-622590 (*Lone Oak Fund, LLC v. 2700 Sloat Holding LLC, et al*), entered an order titled *Ex Parte Order* which appointed me as receiver over the real property commonly known as 2700-2750 Sloat Boulevard, San Francisco, California 94116 (the "Property") at the request of Lone Oak Fund, LLC ("Lone Oak"). On May 7, 2025, the Superior Court entered an additional order titled *Order Confirming Appointment of Receiver and Preliminary Injunction—Rents, Issues, and Profits* which further established my duties and authority.

4. The Property is an 8,000 square foot retail building on a combined 38,095 square foot lot. The Property has been leased to a third party, Sloat Garden Center ("Tenant"), who should have been paying the amount of $34,326.92 per month and which monthly rents are expected to increase to above $45,000.00 in September, 2025. None of

the rents were being used to pay the amounts due and owing to Lone Oak, for property taxes or for the maintenance or preservation of the Property, to my knowledge.

5. Debtor 2700 Sloat Holding, LLC (the "Debtor") generally failed to cooperate with the receivership and failed to turn over books and records relating to the Property, which has made it difficult to ascertain the Property's financial performance under its management.

6. The Tenant demonstrated to me that it delivered the amount of $415,584.59 (the "Prepaid Rents") to the Debtor for prepaid rents for November 2024 through August 2025. The Debtor collected the Prepaid Rents from the Tenant shortly after it defaulted on Lone Oak's loan.

7. As a result, there are no rents to be collected until September 1, 2025, and no funds with which to operate or maintain the Property.

8. I directed Debtor to turn over the Prepaid Rents, but Debtor has failed to do so, claiming that the Prepaid Rents were already spent. Despite my repeated requests, Debtor refused to provide a full accounting for the Prepaid Rents or adequate evidence demonstrating that they were actually consumed.

9. On April 29, 2025, I caused to be filed my *ex parte* application for the issuance of an order to show cause to the Debtor to turnover the Prepaid Rents, which application was set for hearing on May 22, 2025. *See,* **Ex. "G"** attached to the Request for Judicial Notice ("RJN") filed concurrently herewith.

10. On May 29, 2025, the State Court granted my request and directed the Debtor to show cause (the "OSC") why it should not be required to return the Prepaid Rents by: (1) providing an explanation and accounting supported by up-to-date financial statements, ledgers, invoices and other supporting documentation as to how the Prepaid Rents were spent; and (2) provide a declaration from Hickey supported by up-to-date documentation accounting for the expenditures made to Hartford Insurance, Pacific Workplaces, Jeffer, Mangels and Veriliant by May 29, 2025. I was ordered to submit a report regarding whether the Debtor's accounting is satisfactory by June 5, 2025. The OSC hearing was set for June 12, 2025. RJN **Ex. "H"**.

11. The Debtor provided its response to the OSC and, on June 5, 2025, I filed my report to the State Court stating that the Debtor's "**purported 'accounting' is entirely unsatisfactory and the June 12, 2025 hearing remains necessary because [Debtor] has continued to defy the Court's orders.**" (Emphasis in original). RJN **Ex. "J"**. There was no actual accounting presented, and Debtor's supporting Declaration largely reiterated prior arguments and attaches previously-provided exhibits, none of which directly address the disposition of the Prepaid Rents. Debtor's Declaration and evidence appeared to confirm that at least $79,000 of the Prepaid Rents was directly transferred to Defendant's manager, Raelynn Hickey ("Hickey").

12. Attached as **Ex. "I"** to the RJN is Hickey's Declaration filed May 29, 2025, with the State Court. As easily shown, Hickey identifies expenses paid, in some cases, years before she absconded with the Prepaid Rents. More unbelievable is her attachment of a monthly payment invoice from Lone Oak dated February 10, 2025, and Property Tax Bills which were never paid by Debtor.

13. On June 12, the State Court was prepared to rule:

> *Receiver's Motion is GRANTED. Defendant has not complied with the Court's May 22, 2025 order or the order appointing Receiver. Defendant is ordered to turnover the rental income and prepaid rents sought in the Receivers Motion. To the extent that Defendant no longer possesses those funds, Defendant is ordered to pay the Receiver the amount that they received in rental income and prepaid rents on November 1, 2024 and December 30, 2024*

However, on May 30, 2025, the Debtor and Hickey requested a postponement of the hearing to July 3, 2025 to enter into a forbearance/extension agreement with Lone Oak.

14. At the request of Lone Oak, I agreed to postpone the hearing until July 3, 2025. RJN **Ex. "K"**.

15. This turned out to be a ruse by the Debtor and Hickey as a voluntary petition under Chapter 11 of the Bankruptcy Code was filed on June 26, 2025.

16. It is readily apparent that none of the Prepaid Rents were applied to discharge all or any portion of Lone Oak's loan, property taxes due or for the care and maintenance of Property which puts the Property at risk and Lone Oak's security at risk of

diminution in value.

17. Rents will finally come due again in September and the Debtor cannot be left to collect, account and properly expend such funds that should only be used to preserve and maintain the Property, pay taxes due thereon and provide adequate protection to Lone Oak.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge

Executed July 30, 2025, at Los Angeles, California.

KEVIN SINGER

**DECLARATION OF JACKSON WYCHE**

I, Jackson Wyche , declare as follows:

1. I am a Partner at Receivership Specialists. Kevin Singer, principal of Receivership Specialists, was appointed as the Superior Court Receiver (the "Receiver") in the San Francisco County Superior Court in case CGC-25-622590 (*Lone Oak Fund, LLC v. 2700 Sloat Holding LLC, et al*).

2. On February 26, 2025, the Superior Court entered an order entitled *Ex Parte Order* which appointed the Receiver over the real property commonly known as 2700-2750 Sloat Boulevard, San Francisco, California 94116 (the "Property") at the request of Lone Oak Lone Oak Fund, LLC ("Lone Oak"). On May 7, 2025, the Superior Court entered an additional order entitled *Order Confirming Appointment of Receiver and Preliminary Injunction—Rents, Issues, and Profits* which further established his duties and authority.

3. Debtor generally failed to cooperate with the receivership and failed to turn over books and records relating to the Property, which has made it difficult to ascertain the Property's financial performance under its management.

4. The Tenant demonstrated to me that it delivered the amount of $415,584.59 (the "Prepaid Rents") to the Debtor for rents for November 2024 through August 2025. The Debtor collected the Prepaid Rents from the Tenant shortly after it defaulted on Lone Oak's loan.

5. As a result, there are no rents to be collected until September 1, 2025, and no funds with which to operate or maintain the Property.

6. The Receiver directed Debtor to turn over the Prepaid Rents, but Debtor has failed to do so, claiming that the Prepaid Rents were already spent. Despite our repeated requests, Debtor refused to provide a full accounting for the Prepaid Rents or adequate evidence demonstrating that they were actually consumed.

7. On March 12, 2025, I responded to Raelynn Hickey's ("Hickey") March 10, 2025 email and letter and asked Hickey to provide "any additional records reflecting the expenditures from the [P]repaid [R]ents". On March 18, 2025, Hickey responded,

reiterated that she and Debtor held less than $100, and claimed that "All funds received from [Tenant] in 2024, regardless of when received, were used to offset payments paid by [Debtor] to [Lone Oak] in 2024, and then applied as offsets to appropriate related other costs." Hickey attached copies of an April 26, 2023 insurance declarations page, an April 17, 2024 insurance declarations page, what appears to be an office lease agreement dated September 1, 2022, an invoice for $17,600 dated February 15, 2024 (which Hickey stated was for utility consulting work), and an email from Wells Fargo reflecting a $10,000 wire transfer on January 18, 2024. Confusingly, Hickey's email concluded, "I do not know, but I assume, that the Receiver has received the lease payment from the [Tenant] for March 2025? Please let me know." Attached as **Ex. "4"** to the Compendium of Evidence filed concurrently herewith is a true and correct copy of my email exchange with Hickey.

8. Later on March 18th, I responded, noting that the Prepaid Rents had been paid after the expenditures Hickey had identified, and that all rents for the post-appointment period would need to be turned over, as well as "comprehensive records detailing the expenditures—bank statements, general ledgers, etc." I followed up on March 25th and March 27th, but Hickey failed to respond. Attached to the Compendium of Evidence as **Ex. "5"** are true and correct copies of my emails to Hickey on March 18th, 25th, and 27th of 2025.

9. On March 28th, attorney Mark S. Hall, Esq. ("Hall") contacted me and advised that he had been engaged by Defendant and Hickey. Between this date and April 17th, Hall and I exchanged a total of seven emails regarding the financial records I had requested. Finally, on April 22nd, Hall sent me a letter which stated: "Hickey has nothing to add to her prior response," that she and Debtor had not maintained any general ledgers, that the rents had been "used to pay the property taxes and the loan from [Lone Oak]," and that "it is Ms. Hickey's position that the receiver has all the information to verify that the prepaid rents received through August 2025 have been applied to property taxes and the … loan. There are no additional documents to produce." Attached to the Compendium of

Evidence as **<u>Exs. "6"</u>** and **<u>"7"</u>** are true and correct copies of my emails with Hall and his April 22nd letter, respectively.

10. After receipt of his April 22, 2025 letter, I met and conferred via phone with Hall and advised that the Receiver would need to proceed with the application for an order to show cause why the Prepaid Rents should not be turned over by Debtor and Hickey.

11. On April 29, 2025, the Receiver filed his *ex parte* application for the issuance of an order to show cause to Debtor and its principal, Hickey, should not immediately turn over $415,584.59 in Prepaid Rents collected from the Property shortly before the Receiver was appointed and/or provide a comprehensive accounting for the disposition of the Prepaid Rents, which application was set for hearing on May 22, 2025. RJN **<u>Ex. "G"</u>**.

12. On May 22, 2025, I appeared and the State Court granted the Receiver's request and directed the Debtor to show cause (the "<u>OSC</u>") why it should not be required to return the Prepaid Rents by: (1) providing an explanation and accounting supported by up-to-date financial statements, ledgers, invoices and other supporting documentation as to how the Prepaid Rents were spent; and (2) provide a declaration from Hickey supported by up-to-date documentation accounting for the expenditures made to Hartford Insurance, Pacific Workplaces, Jeffer, Mangels and Veriliant by May 29, 2025. The Receiver was ordered to submit a report regarding whether the Debtor's accounting is satisfactory by June 5, 2025. The hearing on the OSC was set for June 12, 2025. RJN **<u>Ex. "H"</u>**.

13. The Debtor filed its response to the OSC and, on June 5, 2025, the Receiver filed his report to the State Court stating that the Debtor's "**purported 'accounting' is entirely unsatisfactory and the June 12, 2025 hearing remains necessary because [Debtor] has continued to defy the Court's orders.**" (Emphasis in original). RJN **<u>Ex. "I"</u>**.

14. There was no actual accounting presented, and Hickey's supporting Declaration largely reiterated prior arguments and attaches previously-provided exhibits, none of which directly address the disposition of the Prepaid Rents. Hickey's Declaration

and evidence appeared to confirm that at least $79,000 of the Prepaid Rents was directly transferred to Hickey.

15. On June 12, 2025, I reviewed the State Court's published tentative ruling, which I copied and which stated:

> *Receiver's Motion is GRANTED. Defendant has not complied with the Court's May 22, 2025 order or the order appointing Receiver. Defendant is ordered to turnover the rental income and prepaid rents sought in the Receivers Motion. To the extent that Defendant no longer possesses those funds, Defendant is ordered to pay the Receiver the amount that they received in rental income and prepaid rents on November 1, 2024 and December 30, 2024.*

16. However, on May 30, 2025, the Debtor and Hickey requested a postponement of the hearing to July 3, 2025 to enter into a forbearance/extension agreement with Lone Oak. At the request of Lone Oak, the Receiver agreed to postpone the hearing until July 3, 2025. RJN, **Ex. "K"**.

17. This turned out to be a ruse by the Debtor and Hickey as a voluntary petition under Chapter 11 of the Bankruptcy Code was filed on June 26, 2025.

18. In summary, it readily appears that none of the Prepaid Rents were applied to discharge all or any portion of the Note, property taxes due or for the care and maintenance of Property which puts the Property at risk and Lone Oak's security at risk of diminution in value.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed July 30, 2025, at Los Angeles, California.

Jackson Wyche

# CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2025, a true and correct copy of **MOTION OF SECURED CREDITOR LOAN OAK FUND, LLC TO EXCUSE COMPLIANCE WITH TURNOVER OF CERTAIN REAL PROPERTY SUBJECT TO STATE COURT RECEIVERSHIP PURSUANT TO BANKRUPTCY CODE § 543(d); MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS IN SUPPORT OF THEREOF** was served via the United States District Court CM/ECF system and/or electronic mail on all parties or persons requiring notice:

- SIMON ARON saron@wrslawyers.com
- CHAPTER 11 - RN USTPRegion17.RE.ECF@usdoj.gov
- J CRAIG DEMETRAS mail@demetras-oneill.com, jcd@demetraslaw.com
- ELSA M. HOROWITZ ehorowitz@wrslawyers.com, jlee@wrslawyers.com
- ROYI MOAS rmoas@wrslawyers.com, mshield@wrslawyers.com
- U.S. TRUSTEE - RN - 11 USTPRegion17.RE.ECF@usdoj.gov
- JARED A. DAY jared.a.day@usdoj.gov

By Jean Lee

Jean Lee, an Employee of
WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP