ROYI MOAS (State Bar No. 10686)
rmoas@wrslawyers.com
WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
3773 Howard Hughes Parkway, Suite 590
South Las Vegas, Nevada 89169
Telephone: (702) 341-5200
Facsimile: (702) 341-5300

SIMON ARON (CA State Bar No. 108183) (admitted pro hac vice)
saron@wrslawyers.com
ELSA M. HOROWITZ (CA State Bar No. 195689) (admitted pro hac vice)
ehorowitz@wrslawyers.com
WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
11400 West Olympic Boulevard, 9th Floor
Los Angeles, California 90064-1582
Telephone: (310) 478-4100
Facsimile: (310) 479-1422

Attorneys for Secured Creditor
LONE OAK FUND, LLC

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>2700 SLOAT HOLDINGS, LLC,<br><br>Debtor. | Case No. 25-50584-hlb<br><br>Chapter 11<br><br>**COMPENDIUM OF EVIDENCE IN SUPPORT OF SECURED CREDITOR LOAN OAK FUND, LLC'S MOTION TO EXCUSE COMPLIANCE WITH TURNOVER OF CERTAIN REAL PROPERTY SUBJECT TO STATE COURT RECEIVERSHIP PURSUANT TO BANKRUPTCY CODE § 543(d)**<br><br>*[Notice of Hearing; Motion to Excuse Compliance; Request for Judicial Notice Filed Concurrently Herewith]*<br><br>Judge: Hon. Hilary L. Barnes<br><br><u>Hearing Information:</u><br>Date: September 9, 2025<br>Time: 2:30 p.m.<br>Place: Courtroom 2<br>C. Clifton Young Federal Building<br>300 Booth Street<br>Reno. NV 89509 |

Secured creditor Loan Oak Fund, LLC ("Creditor") hereby submits the following Compendium of Evidence in support of Creditor's *Motion to Excuse Compliance with Turnover of Certain Real Property Subject to State Court Receivership Pursuant to Bankruptcy Code § 543(d)*:

| **Exhibit** | **Description** |
|---|---|
| Exhibit "1" | Promissory Note in the principal amount of $10,000,000.00 dated July 29, 2022 signed by Raelynn Hickey, Manager of CH Planning LLC, a Nevada limited liability company, Sole Member of 2700 Sloat Holding LLC, a Nevada limited liability company. |
| Exhibit "2" | Property Tax Bills for 2700-2750 Sloat Boulevard, San Francisco, California 94116 (the "Property") obtained from the San Francisco County Treasurer and Tax Collector official website at https://county-taxes.net/ca-sanfrancisco/ca-sanfrancisco/property-tax. |
| Exhibit "3" | May 30, 2025 – June 3, 2025 Email Chain between Lone Oak and Raelynn Hickey seeking a forbearance. |
| Exhibit "4" | March 12, 2025 – March 18, 2025 Email Chain between Jackson Wyche and Raelynn Hickey regarding Prepaid Rents. |
| Exhibit "5" | March 18, 2025 – March 27, 2025 Jackson Wyche Emails to Raelynn Hickey regarding rents and records for post-appointment (of receiver) period. |
| Exhibit "6" | March 28, 2025 – April 17, 2025 Email Chain between Jackson Wyche and Mark Hall regarding financial records requested by Receiver's office. |
| Exhibit "7" | April 22, 2025 Mark Hall Letter to Jackson Wyche. |

DATED: August 11, 2025

WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP

By: */s/ Simon Aron*
SIMON ARON
Attorneys for Secured Creditor, Lone Oak Fund, LLC, a California limited liability company

# EXHIBIT "1"

# PROMISSORY NOTE

July 29, 2022

PRINCIPAL AMOUNT: $10,000,000.00

FOR VALUE RECEIVED, the undersigned, 2700 SLOAT HOLDING LLC, a Nevada limited liability company ("**Borrower**"), whose address is 201 Spear Street, Suite 1100, San Francisco, California 94105, promises to pay to the order of LONE OAK FUND, LLC, a California limited liability company, or its assignees or assigns ("**Lender**"), at 11611 San Vicente Blvd., Suite 640, Los Angeles, California 90049, or at such other place as the Lender may from time to time designate in writing, in lawful money of the United States of America, the principal sum of TEN MILLION and No/100 Dollars ($10,000,000.00), so much as may be advanced from time to time hereunder, with interest at the rate, and with principal and interest due and payable, all as set forth below. This Promissory Note is sometimes referred to herein as this "**Note**", and the loan evidenced by this Note is sometimes referred to herein as the "**Loan**". This Note is secured by that certain Deed of Trust with Absolute Assignment of Leases and Rents, Security Agreement and Fixture Filing of even date herewith (the "**Deed of Trust**"), made by Borrower, as Trustor, for the benefit of Lender, a Beneficiary. Capitalized term not otherwise defined herein shall have the meaning given to such terms in the Deed of Trust and the other Loan Documents associated with the Loan.

**1.1 Maturity Date.** The date when all sums due under this Note are due and payable is the "**Maturity Date".** The Maturity Date shall mean January 31, 2024.

**1.2 Rate of Interest.** The principal balance outstanding from time to time shall bear interest from and after the date advanced up to and including July 31, 2023 at the rate of SIX and FOUR TENTHS per cent (6.40%) per annum and at the rate of SIX and NINE TENTHS per cent per annum from and after August 1, 2023 (in each case, the "**Note Rate**").

**1.3 Method of Computation of Interest.** Interest for periods of one or more whole calendar months shall be calculated on the basis of one-twelfth (1/12) of one year's interest for each such month that principal is outstanding. Interest for a period of less than a whole calendar month shall be calculated on the basis of one-three hundred sixtieth (1/360) of one year's interest on the outstanding principal at the applicable rate times the number of days during such period that principal is outstanding.

**1.4 Monthly Payments Prior to Maturity Date.** On the first day of each calendar month commencing September 1, 2022 until the Maturity Date, there shall be due and payable a monthly payment in an amount equal to all accrued interest. Except as otherwise set forth herein or in the other Loan Documents, interest shall be paid in arrears.

**1.5 Payment in Full upon Maturity Date.** On the Maturity Date, the entire unpaid principal balance and all accrued interest shall be due and payable.

**1.6 Project Cost Reserve Advance Requests**. The undisbursed portion of the Loan shall be used and disbursed only for the payment or costs of construction of the Improvements and costs related to such construction, subject to the terms and conditions of this Note. To receive an advance, Borrower shall submit a request via email to Lender (an "**Advance Request**"). Whenever possible, advances shall be made in amounts not less than $25,000.00. Upon receipt of an Advance Request, Lender shall instruct a third-party Project Cost Reserve manager (the "Reserve Manager") to determine the quality, progress, and stage of construction. If Lender and Reserve Manager determine from such inspection that work is proceeding diligently, and that all conditions to such Advance Request have been met, Lender will make advances in accordance with Borrower's request, or in an amount deemed appropriate by Lender. Each Advance Request shall contain, or be accompanied by, an itemized statement showing all information requested by Lender or Reserve Manager. Borrower shall be responsible for all third-party fees in connection with the Project Cost Reserve.

**1.7 Prepayments.** Borrower may prepay all or any part of the principal balance at any time without charge or premium, however any partial payments of principal shall be made in even, one thousand dollar ($1,000) increments.

**1.8 Manner of Payment**. All monthly payments of interest made under this Note, and such other payments as directed by Lender under the Loan Documents, shall be made by electronic funds transfer ("**EFT**") debit entries to an account designated by Borrower in the Loan Documents at an Automated Clearing House ("**ACH**") member domestic bank ("**Debit Account**"). Each payment shall be initiated by Lender through the ACH network for settlement on the designated date. Prior to each payment due date, Borrower shall deposit and/or maintain sufficient funds in the Debit Account to cover each debit entry. The Debit Account shall be vested in Borrower's name only. Only payments drawn on the Debit Account or an escrow established for payment of funds due Borrower on account of a sale or refinance of the Property will be accepted by Lender.

**1.9 Security.** This Note is secured by, among other things, that certain Deed of Trust, encumbering Borrower's interest in real property described in the Deed of Trust and improvements located or to be located thereon and certain personal property (the "**Property**"). This Note, the Deed of Trust, and all other present and future agreements, documents and instruments executed or to be executed in connection with the Loan, all extensions, renewals, substitutions, replacements and modifications of any of the foregoing documents are referred to herein, collectively, as the "**Loan Documents**".

**1.10 Application of Payments.** All payments received, irrespective of how they may be designated by Borrower, shall be applied in this order: first, to amounts other than interest and principal, if any, owing under this Note, the Deed of Trust or any of the other Loan Documents; second, to accrued interest; third, to principal; except that, after the occurrence and during the continuation of any Event of Default, all amounts received shall be applied in such order as Lender, in its sole discretion, may elect. Borrower waives the application of Sections 1479 and 2822(a) of the California Civil Code and any other statute or rule of law that would otherwise direct, or permit Borrower to direct, the order of application of payments made by Borrower or amounts otherwise received by Lender.

**1.11 No Waiver by Acceptance of Overdue or Partial Payments.** If Lender accepts payment of any overdue amount, or partial payment of an amount due and the remainder of such amount is unpaid, such acceptance shall in no event: (a) constitute a cure or waiver of Borrower's default with respect to such overdue or unpaid amount; (b) prevent Lender from exercising any of its rights and remedies with respect to Borrower's default; or (c) constitute a waiver of Lender's right to require full and timely payment of amounts becoming due thereafter or to exercise any of Lender's rights and remedies for any failure to so pay.

**1.12 Late Payment Charge.** Borrower acknowledges that late payment to Lender of any sums due hereunder will cause Lender to incur costs not contemplated hereunder, the exact amount of which would be impracticable or extremely difficult to ascertain. Such costs include processing and accounting costs, the expenses incurred and time and effort associated with recovering the delinquent payment, and the loss of timely use of the payment amount. Accordingly, if any amount due from Borrower, whether interest or principal, is not received by Lender or Lender's designee within ten (10) calendar days after its due date, Borrower shall then pay to Lender a late payment charge equal to TEN percent (10.00%) of such overdue amount (the "**Late Charge**"). Borrower and Lender agree that such Late Charge represents a fair and reasonable estimate of the costs Lender will incur by reason of late payment. This provision shall not be construed as extending the time for payment of any amount under this Note, and acceptance of a Late Charge by Lender shall in no event constitute a waiver of Borrower's default with respect to the overdue amount nor prevent Lender from exercising any of its rights and remedies with respect to such default.

**1.13 Default.** The term "Default" shall mean the occurrence of an Event of Default as defined in the Deed of Trust. The existence of a Default shall be deemed to be on the first date of the occurrence of an Event of Default (the "Date of Default"), and all rights and remedies of Lender, Beneficiary and Trustee under the Loan Documents with respect thereto, with or without notice, shall be retroactive to the Date of Default.

**1.14 Acceleration upon Default.** Upon the occurrence of an Event of Default, Lender may, at its election, declare the entire balance of principal and accrued interest immediately due and payable. A delay by Lender in exercising any right of acceleration after an Event of Default shall not constitute a waiver of the Event of Default or of the right of acceleration or any other right or remedy for such Event of Default, including the imposition of the Default Rate (defined below) from the Date of Default. The failure by Lender to exercise any right of acceleration as a result of an Event of Default shall not constitute a waiver of the right of acceleration or any other right or remedy with respect to any other Event of Default, whenever occurring.

**1.15 Interest Rate after Acceleration or Maturity.** When this Note becomes due in full, whether by acceleration, upon an Event of Default, by the occurrence of the Maturity Date, or in any other manner, if Borrower fails to pay all amounts due, the unpaid principal balance and costs incurred shall, from and after such date due and without notice, bear interest until paid at the rate of TWENTY FOUR percent (24.00%) per annum (the "**Default Rate**").

**1.16 Enforcement / Attorneys' Fees and Costs.** Borrower shall immediately reimburse Lender for all fees and costs, including reasonable attorneys' fees and experts' fees and

costs, incurred by Lender for: (a) enforcement of this Note or any of its terms, or the exercise of any rights or remedies hereunder and/or at law, in equity or otherwise, whether or not any action or proceeding is filed; (b) representation of Lender in any bankruptcy, insolvency, reorganization or other debtor-relief or similar proceeding of or relating to Borrower or Borrower's transferees or assigns, to any person liable (by way of guaranty, assumption, endorsement or otherwise) upon any of the obligations of this Note, or to the Property; or (c) representation of Lender in any action or proceeding relating to the Property, including, but not limited to, foreclosure, receivership, lien or stop-notice enforcement, bankruptcy, eminent domain and probate actions or proceedings, whether commenced by Lender or any other person, and whether commenced prior or subsequent to payment of all obligations under this Note. All such fees and costs shall bear interest until paid at the rate applicable from time to time under this Note. This section shall survive payment of all obligations under this Note and reconveyance of the deed of trust securing this Note.

**1.17 Waivers by Borrower and Other Parties.** The Borrowers, endorsers, guarantors and sureties of this Note hereby waive diligence, demand, presentment, notice of non-payment, notice of dishonor, protest and notice of protest, agree that the time for performance of any obligation under this Note may be extended from time to time without notice, consent to the release without notice of any party liable hereon or here for, consent to the addition without notice of parties liable hereon or here for, and consent to the acceptance without notice of further security for this Note, including other types of security, all without in any way affecting their liability, and waive the right to plead any and all statutes of limitations as a defense to this Note, any guaranty hereof or any agreement to pay the obligations hereof, to the full extent permitted by law.

**1.18 Full Payment.** All amounts payable under this Note shall be paid in full without setoff, deduction or counterclaim. All amounts payable under this Note shall be free and clear of and without any deduction or withholding for or on account of any taxes, levies, duties, charges, fees, restrictions or conditions of any nature now or hereafter imposed by any country, federal, state, county or local government or any political subdivision or taxing authority thereof or therein. Borrower shall indemnify Lender against any such taxes, levies, imposts, duties, charges and fees (other than taxes on the income of Lender imposed by any taxing authority) which may be assessed against Lender or claimed or demanded from Lender in respect of any amount payable by Borrower hereunder, and against any costs, charges, expenses or liability arising out of or with respect to such assessment, claim or demand, to the full extent permitted by law.

**1.19 Time of the Essence.** Time is of the essence with respect to the payment and performance of the obligations under this Note.

**1.20 No Oral Waivers or Modifications.** No provision of this Note may be waived or modified orally, but only in a writing signed by Lender.

**1.21 Governing Law.** This Note shall be governed by and construed under the laws of the State of California, without regard to conflict of law provisions.

**1.22 Severability.** Every provision of this Note is intended to be several. If any provision of this Note is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, such illegality, invalidity or unenforceability shall not affect the other provisions hereof, which shall remain binding and enforceable.

**1.23 Limitation upon Interest.** All agreements between the Borrower and Lender, now existing or hereafter arising, are hereby expressly limited so that in no event whatsoever shall the amount paid or agreed to be paid to Lender hereof for the use, forbearance or detention of money to be loaned hereunder or otherwise, or for the performance or payment of any covenant or obligation contained herein, exceed the maximum amount permissible under applicable law. If from any circumstance whatsoever fulfillment of any provision hereof exceeds the limit of validity prescribed by law, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any such circumstance Lender hereof shall ever receive as interest under this Note or otherwise an amount that would exceed the highest lawful rate, such amount that would be excessive interest shall be applied to the reduction of the principal amount owing hereunder (without charge for prepayment) and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of principal, such excess shall be refunded to Borrower.

**1.24 Licenses.** Lender is licensed as a California Finance Lender, Department of Financial Protection and Innovation license number 603B623.

**1.25 Headings.** Headings herein are used for convenience of reference only and do not define or limit the scope of provisions of this Note.

**1.26 Successors and Assigns.** This Note binds Borrower and its successors, permitted assigns, heirs, administrators and executors, and inures to the benefit of Lender and its successors, assigns, participants, heirs, administrators and executors. Lender in its sole discretion may transfer this Note, and may sell or assign participations or other interests in all or any part of this Note, all without notice to or consent of Borrower.

2700 SLOAT HOLDING LLC, a
Nevada limited liability company

By: CH PLANNING LLC, a
Nevada limited liability company,
Sole Member

By____________________________
Raelynn Hickey, Manager

# EXHIBIT "2"

City & County of San Francisco
José Cisneros, Treasurer
David Augustine, Tax Collector
Property Tax Bill (Secured)
For Fiscal Year July 1,2024 through June 30, 2025

1 Dr. Carlton B. Goodlett Place
City Hall, Room 140
San Francisco, CA 94102
www.sftreasurer.org

| Vol | Block | Lot | Bill No | Mail Date | Property Location |
|---|---|---|---|---|---|
| 18 | 2514 | 007 | 20240344198 | October 21, 2024 | 2750 SLOAT BLVD |

Assessed on January 1, 2024 at 12:01am
To: NAME WITHHELD PER CA AB 2238

**ADDRESS INFORMATION NOT AVAILABLE ONLINE**

| ▶ TOTAL DUE | $22,854.92 |
|---|---|
| 1st Installment | 2nd Installment |
| $11,427.46 | $11,427.46 |
| Due 12/10/2024 | Due 04/10/2025 |

Important Messages

Assessed Value

| Description | Full Value |
|---|---|
| Land | $1,883,644 |
| Structure | |
| Fixtures | |
| Personal Property | |
| Gross Assessed Value | $1,883,644 |
| Less HO Exemption | $0 |
| Less Other Exemption | $0 |
| **Net Assessed Value** | **$1,883,644** |
| **Tax Amount** | **$22,065.62** |

Direct Charges and Special Assessments

| Type | Telephone | Amount Due |
|---|---|---|
| 46 - San Francisco Bay Restoration Authority | (888) 508-8157 | $12.00 |
| 89 - SFUSD Facilities District | (415) 355-2203 | $42.16 |
| 91 - SFCCD Parcel Tax | (415) 487-2400 | $99.00 |
| 98 - SFUSD - Teacher Support | (415) 355-2203 | $310.76 |
| 101 - School Parcel Tax of 2020 | (415) 355-2203 | $325.38 |
| **Total Direct Charges and Special Assessments** | | **$789.30** |

Keep this portion for your records. See back of bill for payment options and additional information.

City & County of San Francisco
Property Tax Bill (Secured)
For Fiscal Year July 1,2024 through June 30, 2025

**Pay online at www.sftreasurer.org**

| Vol | Block | Lot | Bill No | Property Location |
|---|---|---|---|---|
| 18 | 2514 | 007 | 20240344198 | 2750 SLOAT BLVD |

☐ Check if contribution to Arts Fund is enclosed.
For other donation opportunities go to www.Give2SF.org

Write your block and lot on your check.
2nd Installment cannot be accepted unless 1st is paid.

SECURED 2

San Francisco Tax Collector
Secured Property Tax
P.O. Box 7426
San Francisco, CA 94120-7426

**2nd Installment Due**

| Pay by | April 10, 2025 | **$11,427.46** |
|---|---|---|
| If paid after April 10, 2025 includes 10% penalty and applicable fees | | $12,627.20 |

1825140000700 20240344198 000000000 000000000 0000 2003

City & County of San Francisco
Property Tax Bill (Secured)
For Fiscal Year July 1,2024 through June 30, 2025

**Pay online at www.sftreasurer.org**

| Vol | Block | Lot | Bill No | Property Location |
|---|---|---|---|---|
| 18 | 2514 | 007 | 20240344198 | 2750 SLOAT BLVD |

☐ Check if contribution to Arts Fund is enclosed.
For other donation opportunities go to www.Give2SF.org

Write your block and lot on your check.
If property has been sold, please forward bill to new owner.

SECURED 1

San Francisco Tax Collector
Secured Property Tax
P.O. Box 7426
San Francisco, CA 94120-7426

**1st Installment Due**

| Pay by | December 10, 2024 | **$11,427.46** |
|---|---|---|
| If paid after December 10, 2024 includes 10% penalty | | $12,570.20 |

1825140000700 20240344198 000000000 000000000 0000 1003

| Pay Now | Contact Us | Tax Rate Information | |
|---|---|---|---|
| Online: www.sftreasurer.org<br><br>Mail a check payable to "SF Tax Collector" with the bottom portion of bill in the enclosed envelope<br><br>In person at City Hall, Room 140. Monday – Friday 8:00AM – 5:00PM Office hours subject to change - please check our website at : www.sftreasurer.org | Free language assistance<br><br>Call: 3-1-1<br>415-701-2311 from outside of San Francisco<br><br>Submit questions online: www.sftreasurer.org/contact-us | Countywide Tax (Secured) | 1.00000000% |
| | | S.F. Bay Area Rapid Transit District Debt Service | 0.01480000% |
| | | S.F. Community College District Debt Service | 0.01718123% |
| | | City and County of S.F. Debt Service | 0.10600267% |
| | | S.F. Unified School District Debt Service | 0.03345173% |
| | | **TOTAL** | **1.17143563%** |

If you disagree with the assessed value as shown on your tax bill, you have the right to an informal assessment review by the Assessor-Recorder's Office. Visit www.sfassessor.org for more information. You also have the right to file an application for reduction in assessment for the following year with the Assessment Appeals Board. The filing period is July 2 to September 16. Visit www.sfgov.org/aab or call 415-554-6778 for more information. If an informal or formal assessment review is requested, relief from penalties shall apply only to the difference between the Assessor-Recorder's final determination of value and the value on the assessment roll for the fiscal year covered.

If a **"Tax-Defaulted"** message is shown on the front of this bill, it indicates that prior year taxes are unpaid. Visit our website for more information.

New owners and current owners with new construction may be required to pay a **supplemental tax bill**. Supplemental tax bills are issued in addition to this annual tax bill.

**Property Tax Postponement for Senior Citizens, Blind, or Disabled Persons**
The State Controller's Office (SCO) administers the Property Tax Postponement (PTP) program, which allows eligible homeowners to postpone payment of current year property taxes on their primary residence. PTP applications are accepted from October 1 to February 10 each year. Go to the SCO website at www.ptp.sco.ca.gov for more information. If you have any questions or to request an application, call (800) 952-5661 or email postponement@sco.ca.gov

---

Did you…

Submit payment for the exact amount?

Confirm that you have sufficient funds in your account? If your payment is not honored by the bank, the payment is null and void and a $50.00 "Payment Failure Fee" will be charged in addition to any late payment penalties.

If the delinquent date falls on a Saturday, Sunday or legal holiday, no penalty is charged if payment is made by 5 PM on the next business day.

If any portion of the total amount due is unpaid after 5 PM on June 30, 2025 , it will be necessary to pay (a) delinquent penalties, (b) costs, (c) redemption penalties, and (d) a redemption fee. After 5 years of tax delinquency, the Tax Collector has the power to sell tax-defaulted property that is not redeemed.

---

Did you…

Submit payment for the exact amount?

Confirm that you have sufficient funds in your account? If your payment is not honored by the bank, the payment is null and void and a $50.00 "Payment Failure Fee" will be charged in addition to any late payment penalties.

If the delinquent date falls on a Saturday, Sunday or legal holiday, no penalty is charged if payment is made by 5 PM on the next business day.

If any portion of the total amount due is unpaid after 5 PM on June 30, 2025 , it will be necessary to pay (a) delinquent penalties, (b) costs, (c) redemption penalties, and (d) a redemption fee. After 5 years of tax delinquency, the Tax Collector has the power to sell tax-defaulted property that is not redeemed.

City & County of San Francisco
José Cisneros, Treasurer
David Augustine, Tax Collector
Property Tax Bill (Secured)
For Fiscal Year July 1,2024 through June 30, 2025

1 Dr. Carlton B. Goodlett Place
City Hall, Room 140
San Francisco, CA 94102
www.sftreasurer.org

| Vol | Block | Lot | Bill No | Mail Date | Property Location |
|---|---|---|---|---|---|
| 18 | 2514 | 008 | 20240344199 | October 21, 2024 | 2700 SLOAT BLVD |

Assessed on January 1, 2024 at 12:01am
To: NAME WITHHELD PER CA AB 2238

**ADDRESS INFORMATION**
**NOT AVAILABLE ONLINE**

| ▶ TOTAL DUE | $85,011.76 |
|---|---|
| 1st Installment | 2nd Installment |
| $42,505.88 | $42,505.88 |
| Due 12/10/2024 | Due 04/10/2025 |

Important Messages

Assessed Value

| Description | Full Value |
|---|---|
| Land | $7,189,684 |
| Structure | |
| Fixtures | |
| Personal Property | |
| Gross Assessed Value | $7,189,684 |
| Less HO Exemption | $0 |
| Less Other Exemption | $0 |
| **Net Assessed Value** | **$7,189,684** |
| **Tax Amount** | **$84,222.46** |

Direct Charges and Special Assessments

| Type | Telephone | Amount Due |
|---|---|---|
| 46 - San Francisco Bay Restoration Authority | (888) 508-8157 | $12.00 |
| 89 - SFUSD Facilities District | (415) 355-2203 | $42.16 |
| 91 - SFCCD Parcel Tax | (415) 487-2400 | $99.00 |
| 98 - SFUSD - Teacher Support | (415) 355-2203 | $310.76 |
| 101 - School Parcel Tax of 2020 | (415) 355-2203 | $325.38 |
| **Total Direct Charges and Special Assessments** | | **$789.30** |

Keep this portion for your records. See back of bill for payment options and additional information.

City & County of San Francisco
Property Tax Bill (Secured)
For Fiscal Year July 1,2024 through June 30, 2025

**Pay online at www.sftreasurer.org**

| Vol | Block | Lot | Bill No | Property Location |
|---|---|---|---|---|
| 18 | 2514 | 008 | 20240344199 | 2700 SLOAT BLVD |

☐ Check if contribution to Arts Fund is enclosed.
For other donation opportunities go to www.Give2SF.org

Write your block and lot on your check.
2nd Installment cannot be accepted unless 1st is paid.

SECURED 2

San Francisco Tax Collector
Secured Property Tax
P.O. Box 7426
San Francisco, CA 94120-7426

**2nd Installment Due**

| Pay by | April 10, 2025 | **$42,505.88** |
|---|---|---|
| If paid after includes 10% penalty and applicable fees | April 10, 2025 | $46,813.46 |

1825140000800 20240344199 000000000 000000000 0000 2003

City & County of San Francisco
Property Tax Bill (Secured)
For Fiscal Year July 1,2024 through June 30, 2025

**Pay online at www.sftreasurer.org**

| Vol | Block | Lot | Bill No | Property Location |
|---|---|---|---|---|
| 18 | 2514 | 008 | 20240344199 | 2700 SLOAT BLVD |

☐ Check if contribution to Arts Fund is enclosed.
For other donation opportunities go to www.Give2SF.org

Write your block and lot on your check.
If property has been sold, please forward bill to new owner.

SECURED 1

San Francisco Tax Collector
Secured Property Tax
P.O. Box 7426
San Francisco, CA 94120-7426

**1st Installment Due**

| Pay by | December 10, 2024 | **$42,505.88** |
|---|---|---|
| If paid after includes 10% penalty | December 10, 2024 | $46,756.46 |

1825140000800 20240344199 000000000 000000000 0000 1003

| Pay Now | Contact Us | Tax Rate Information | |
|---|---|---|---|
| Online: www.sftreasurer.org<br><br>Mail a check payable to "SF Tax Collector" with the bottom portion of bill in the enclosed envelope<br><br>In person at City Hall, Room 140. Monday – Friday 8:00AM – 5:00PM Office hours subject to change - please check our website at : www.sftreasurer.org | Free language assistance<br><br>Call: 3-1-1<br>415-701-2311 from outside of San Francisco<br><br>Submit questions online: www.sftreasurer.org/contact-us | Countywide Tax (Secured) | 1.00000000% |
| | | S.F. Bay Area Rapid Transit District Debt Service | 0.01480000% |
| | | S.F. Community College District Debt Service | 0.01718123% |
| | | City and County of S.F. Debt Service | 0.10600267% |
| | | S.F. Unified School District Debt Service | 0.03345173% |
| | | **TOTAL** | **1.17143563%** |

If you disagree with the assessed value as shown on your tax bill, you have the right to an informal assessment review by the Assessor-Recorder's Office. Visit www.sfassessor.org for more information. You also have the right to file an application for reduction in assessment for the following year with the Assessment Appeals Board. The filing period is July 2 to September 16. Visit www.sfgov.org/aab or call 415-554-6778 for more information. If an informal or formal assessment review is requested, relief from penalties shall apply only to the difference between the Assessor-Recorder's final determination of value and the value on the assessment roll for the fiscal year covered.

If a **"Tax-Defaulted"** message is shown on the front of this bill, it indicates that prior year taxes are unpaid. Visit our website for more information.

New owners and current owners with new construction may be required to pay a **supplemental tax bill**. Supplemental tax bills are issued in addition to this annual tax bill.

**Property Tax Postponement for Senior Citizens, Blind, or Disabled Persons**
The State Controller's Office (SCO) administers the Property Tax Postponement (PTP) program, which allows eligible homeowners to postpone payment of current year property taxes on their primary residence. PTP applications are accepted from October 1 to February 10 each year. Go to the SCO website at www.ptp.sco.ca.gov for more information. If you have any questions or to request an application, call (800) 952-5661 or email postponement@sco.ca.gov

---

Did you…

Submit payment for the exact amount?

Confirm that you have sufficient funds in your account? If your payment is not honored by the bank, the payment is null and void and a $50.00 "Payment Failure Fee" will be charged in addition to any late payment penalties.

If the delinquent date falls on a Saturday, Sunday or legal holiday, no penalty is charged if payment is made by 5 PM on the next business day.

If any portion of the total amount due is unpaid after 5 PM on June 30, 2025 , it will be necessary to pay (a) delinquent penalties, (b) costs, (c) redemption penalties, and (d) a redemption fee. After 5 years of tax delinquency, the Tax Collector has the power to sell tax-defaulted property that is not redeemed.

---

Did you…

Submit payment for the exact amount?

Confirm that you have sufficient funds in your account? If your payment is not honored by the bank, the payment is null and void and a $50.00 "Payment Failure Fee" will be charged in addition to any late payment penalties.

If the delinquent date falls on a Saturday, Sunday or legal holiday, no penalty is charged if payment is made by 5 PM on the next business day.

If any portion of the total amount due is unpaid after 5 PM on June 30, 2025 , it will be necessary to pay (a) delinquent penalties, (b) costs, (c) redemption penalties, and (d) a redemption fee. After 5 years of tax delinquency, the Tax Collector has the power to sell tax-defaulted property that is not redeemed.

# EXHIBIT “3”

**From:** Marian Manzer <marian@loneoakfund.com>
**Sent:** Tuesday, June 3, 2025 10:32 AM
**To:** rh@ch-planning.com
**Subject:** RE: 2700 Sloat Lone Oak Lone Payment

**Importance:** High

Hello Raelynn Hickey –

Loan Committee's response below:

Subject to receipt of a $2,442,670 wire from Borrower on or before 6/9/2025 for the items listed below and execution of a Forbearance Agreement by both Borrower and Subordinate Lender, Loan Committee agreed to forbear through 8/31/2025:

| | |
|---|---|
| $1,000,000.00 | Principal paydown |
| 74,166.67 | Interest @ 8.90% 12/1-12/31/2024 ($2,472.2222/day) |
| 7,416.67 | 10% Late Fee for January 2025 Payment |
| 74,166.67 | Interest @ 8.90% 1/1-1/31/2025 ($2,472.2222/day) |
| 7,416.67 | 10% Late Fee for February 2025 Payment |
| 200,000.00 | Interest @ 24.00% 2/1-2/28/2025 ($6,666.6667/day) |
| 200,000.00 | Interest @ 24.00% 3/1-3/31/2025 ($6,666.6667/day) |
| 200,000.00 | Interest @ 24.00% 4/1-4/30/2025 ($6,666.6667/day) |
| 200,000.00 | Interest @ 24.00% 5/1-5/31/2025 ($6,666.6667/day) |
| 30,000.00 | Estimated Legal Fees and Costs through 5/31/2025 |
| 50,000.00 | Estimated Receiver Fees and Costs through 5/31/2025 |
| 35,486.00 | Estimated Foreclosure Fees and Costs through 5/31/2025 |
| 118,767.32 | Unpaid 1st & 2nd inst property taxes, APNs 2514-008 & 2514-007 |
| 200,250.00 | 3 mo interest reserve on $9,000,000 at 8.90% |
| 45,000.00 | 0.50 pt Forbearance Fee on remaining $9,000,000 principal |
| $2,442,670.00 | Total before Forbearance Fee |

Upon receipt of the $2,442,670 wire and the signed Forbearance Agreement on or before 6/9/2025, Lone Oak will postpone the Trustee Sale until after 8/31/2025 and pay the property taxes to the San Francisco County Treasurer-Tax Collector for the benefit of APNs 2514-008 and 2514-007. The Receiver, Notice of Default and Notice of Sale will remain in place until the Loan is paid in full on or before 8/31/2025.

LONE OAK FUND
CALIFORNIA'S BRIDGE LENDER

*Marian K. Manzer*
LONE OAK FUND, LLC
CFL No. 603B623
11611 San Vicente Blvd, Suite 640
Los Angeles, California 90049
Ofc – 310.826.2888 x14
Fax – 310.820.9145

---

**From:** rh@ch-planning.com <rh@ch-planning.com>
**Sent:** Monday, June 2, 2025 3:09 PM
**To:** Marian Manzer <marian@loneoakfund.com>
**Subject:** RE: 2700 Sloat Lone Oak Lone Payment

Hi Marian

Would you see if the Loan Committee would approve a 90 day forbearance agreement for either of the two options listed below:

1. A $1,000,000 loan paydown, or

2. A $500,000 Forbearance Fee

Look forward to hearing back from you on sufficiency of either of these terms.

Best,

Raelynn Hickey

CH Planning, LLC

Phone: 415 601 2326
Email: rh@ch-planning.com

---

**From:** Marian Manzer <marian@loneoakfund.com>
**Sent:** Friday, May 30, 2025 12:58 PM
**To:** rh@ch-planning.com
**Subject:** RE: 2700 Sloat Lone Oak Lone Payment

Loan Committee asks for Borrower proposal.

LONE OAK FUND
CALIFORNIA'S BRIDGE LENDER

*Marian K. Manzer*
LONE OAK FUND, LLC
CFL No. 603B623
11611 San Vicente Blvd, Suite 640
Los Angeles, California 90049
Ofc – 310.826.2888 x14
Fax – 310.820.9145

---

**From:** rh@ch-planning.com <rh@ch-planning.com>
**Sent:** Friday, May 30, 2025 12:54 PM
**To:** Marian Manzer <marian@loneoakfund.com>
**Subject:** 2700 Sloat Lone Oak Lone Payment

Hi Marian

I wanted to ask if it would be possible to get a Forbearance Agreement or Postponement of the Scheduled Trustee's Sale Date if we made a substantial paydown on the outstanding loan amount. If we could, I would like to discuss the amount required related to any particular arrangement made and proceed with the paydown immediately.

Thanks Marian.

Best,

Raelynn Hickey

Manager
CH Planning, LLC

rh@ch-planning.com
415 601 2326

postponement of the Trustee's Sale date , if we were to make

This email and any files transmitted with it are privileged and confidential and intended solely for the use by the individual or entity to whom they are addressed. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy. If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution of this message, or the taking of any action based upon it, is strictly prohibited. Lone Oak Fund LLC / Lone Oak Industries, Inc., 11611 San Vicente Blvd., Suite 640, Los Angeles, CA, 90049, USA

# EXHIBIT "4"

**Jackson Wyche**

| | |
|---|---|
| **From:** | rh@ch-planning.com |
| **Sent:** | Tuesday, March 18, 2025 3:19 AM |
| **To:** | Louise Dawson; Jackson Wyche; jh@lifetimeaffordablehousing.org |
| **Cc:** | Kevin Singer |
| **Subject:** | RE: 2700 Lone Oak Fund v Sloat Holdings (SF CGC-25-622590): Letter from Receiver Kevin Singer |
| **Attachments:** | Hartford Premium Page BOP Sloat Policy 7-2023 to 7-2024.pdf; Hartford Premium Page BOP Sloat Policy 7-2024 to 7-2025.pdf; PWP Reno Contract Invoice - 2700 Sloat PWP Reno lease 090822.pdf; Verliant Sloat Feb 2024.pdf; Verliant Inv Sloat Dec_Jan 2024 - Partial Wells Fargo Wire Payment 1-18-2024.pdf |

Hello Louise

Always happy to continue with our full cooperation on this matter.

I thought my previous email made it clear. 2700 Sloat Holding, LLC, is not in possession of any funds previously received in 2024 from the Sloat Garden Center, prepaid or otherwise. Additionally, there is less than $100 cash or deposits on hand at this time. Further, Lease revenue received from the Sloat Garden Center was the only revenue received by 2700 Sloat Holding, LLC, in 2024. 2700 Sloat Holding, LLC, has not received any funds from the Sloat Garden Center in 2025.

I also previously stated that the Lease and Lone Oak loan information, which is already in the Receiver's possession, verifies that each of the monthly interest payments paid directly to Lone Oak by 2700 Sloat Holding, LLC, in 2024, were approximately 75% to 90% greater than the scheduled monthly Lease payment payable by the Sloat Garden Center under the lease to 2700 Sloat Holding, LLC. All funds received from Sloat Garden Center in 2024, regardless of when received, were used to offset payments paid by 2700 Sloat Holding, LLC, to Lone Oak in 2024, and then applied as offsets to appropriate related other costs.

The purpose of the loan from Lone Oak, as the loan documents clearly state, was for developing the 2700 Sloat property. That purpose did not and has not stopped or changed just because we were unable to pay off the Lone Oak loan when due on January 31, 2025, or separately make a related interest payment to Lone Oak by January 31, 2025. Therefore, a direct comparison of total funds received by 2700 Sloat Holding, LLC, from the Sloat Garden Center in 2024 vs payments made by 2700 Sloat Holding, LLC, to Lone Oak is inappropriate.

That said, however, 2700 Sloat Holding, LLC, started paying the full monthly interest payment directly to Lone Oak commencing with the interest payment paid in March 2024 and the last payment was made to Lone Oak in December 2024. A simple review of the total funds received by 2700 Sloat Holding, LLC, from the Sloat Garden Center and just a limited number of the expense amounts incurred and paid by 2700 Sloat Holding, LLC, during the same 2024 time frame shows:

Between March 2024 through December 2024, Sloat Garden Center paid 2700 Sloat Holding LLC, total cash of $880,271.43 (Already in Receiver's possession)
Between March 2024 through December 2024, 2700 Sloat Holding, LLC, paid Lone Oak total cash of $763,591.49 (Already in Receiver's possession)
Subtotal Net Cash received from Sloat Garden Center $116,679.94

LESS:
April 2024 Property Tax Payment (1/2 year) for 2700 Sloat - paid $ 53,146.33 (Already in Receiver's possession)
2024 Hartford Insurance for 2700 Sloat - paid $ 5,508.26 (see attached)
Pacific Workplaces for 2700 Sloat Office Service Exps – 2024 paid $ 7,020.00 (see attached)
Jeffer Mangels – legal for 2700 Sloat – 2024 - paid $ 43,732.00
Verliant – Utility Consulting work for new PG&E and SFPUC Water/Sewer Service to 2700 Sloat - paid $ 29,600.00 (see attached)

Subtotal Net Cash from Sloat Garden Center $ 22,326.65 (negative cash)

These numbers clearly demonstrate that regardless of how funds received from the Sloat Garden Center in 2024 would be categorized (current, prepaid or otherwise), the funds received from Sloat Garden Center by 2700 Sloat Holding, LLC, in 2024 do not even equal the amount that was needed by 2700 Sloat Holding, LLC, to pay the paid expense items, identified above, in 2024, which include all of the payments paid to Lone Oak by 2700 Sloat Holding, LLC, property taxes paid in 2024, other carry expenses and some of the administrative and other expenses incurred and paid in 2024.

I do not know, but I assume, that the Receiver has received the lease payment from the Sloat Garden Center for March 2025? Please let me know.

I hope this is helpful information.

Best,

Raelynn Hickey

CH Planning, LLC

Phone: 415 601 2326
Email: rh@ch-planning.com

---

**From:** Louise Dawson <Louise@receivershipspecialists.com>
**Sent:** Monday, March 17, 2025 3:57 PM

**To:** Jackson Wyche <Jackson@receivershipspecialists.com>; rh@ch-planning.com; jh@lifetimeaffordablehousing.org
**Cc:** Kevin Singer <Kevin@receivershipspecialists.com>
**Subject:** Re: 2700 Lone Oak Fund v Sloat Holdings (SF CGC-25-622590): Letter from Receiver Kevin Singer

Raelynn,
I just wanted to check in and see when we can expect a response from you to Jackson's email that includes a verification of funds spent on the property?
Your cooperation is appreciated.

**Louise Dawson**
Senior Project Manager for
Court Receiver Kevin Singer

Southern California (310) 552-9064
Northern California (415) 590-4823
Arizona (602) 343-1889
Nevada (702) 562-4230
Cell Phone (707) 567-6739
www.ReceivershipSpecialists.com

ReceivershipSpecialis

The information contained in this e-mail message may be privileged, confidential, and protected from disclosure. This information may not shared with other people or posted in an electronic format for anyone else to read. If you are not the intended recipient, any dissemination, distribution, or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender.

---

**From:** Jackson Wyche <Jackson@receivershipspecialists.com>
**Sent:** Wednesday, March 12, 2025 11:13 AM
**To:** rh@ch-planning.com <rh@ch-planning.com>; jh@lifetimeaffordablehousing.org <jh@lifetimeaffordablehousing.org>
**Cc:** Kevin Singer <Kevin@receivershipspecialists.com>; Louise Dawson <Louise@receivershipspecialists.com>
**Subject:** RE: 2700 Lone Oak Fund v Sloat Holdings (SF CGC-25-622590): Letter from Receiver Kevin Singer

Hi Raelynn,

On behalf of the Receiver, thank you so much for sending this letter and the various attachments. We greatly appreciate you taking the time to put together a comprehensive response.

I have one follow-up request: as the letter noted, we are aware that the tenant prepaid rents in excess of $415,000 prior to the Receiver's appointment. It appears from your response that essentially all of those funds were spent on the Property, and that there is nothing left to turn over. Because the Receiver has an affirmative duty to verify that he has taken possession of all assets of the Receivership Estate, we need to verify those expenditures. Can you please provide me with any additional records you have reflecting the expenditures from the prepaid rents?

Thank you,
**Jackson Wyche** *for*
Receivership Specialists

# EXHIBIT "5"

**Jackson Wyche**

| | |
|---|---|
| **From:** | Jackson Wyche |
| **Sent:** | Thursday, March 27, 2025 9:24 AM |
| **To:** | rh@ch-planning.com |
| **Cc:** | Kevin Singer; Louise Dawson; jh@lifetimeaffordablehousing.org |
| **Subject:** | RE: 2700 Lone Oak Fund v Sloat Holdings (SF CGC-25-622590): Letter from Receiver Kevin Singer |

Raelynn,

I need a full response to my 3/18 email by close of business tomorrow, otherwise we are going to have to bring an application for an OSC against you, which we would prefer to avoid.

Thank you,

**Jackson Wyche** *for*
Receivership Specialists

Direct (424) 276-2504
Southern California (310) 552-9064
Northern California (415) 848-2984
Arizona (602) 343-1889
Nevada (702) 562-4230
www.ReceivershipSpecialists.com

The information contained in this e-mail message may be privileged, confidential, and protected from disclosure. If you are not the intended recipient, any dissemination, distribution, or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender

---

**From:** Jackson Wyche
**Sent:** Tuesday, March 25, 2025 1:40 PM
**To:** rh@ch-planning.com
**Cc:** Kevin Singer <Kevin@receivershipspecialists.com>; Louise Dawson <Louise@receivershipspecialists.com>; jh@lifetimeaffordablehousing.org
**Subject:** RE: 2700 Lone Oak Fund v Sloat Holdings (SF CGC-25-622590): Letter from Receiver Kevin Singer
**Importance:** High

Hi Raelynn,

Following up on the requests in my email below.

Thank you,

**Jackson Wyche** *for*
Receivership Specialists

Direct (424) 276-2504
Southern California (310) 552-9064
Northern California (415) 848-2984

Arizona (602) 343-1889
Nevada (702) 562-4230
www.ReceivershipSpecialists.com

The information contained in this e-mail message may be privileged, confidential, and protected from disclosure. If you are not the intended recipient, any dissemination, distribution, or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender

---

**From:** Jackson Wyche
**Sent:** Tuesday, March 18, 2025 1:02 PM
**To:** rh@ch-planning.com
**Cc:** Kevin Singer <Kevin@receivershipspecialists.com>; Louise Dawson <Louise@receivershipspecialists.com>; jh@lifetimeaffordablehousing.org
**Subject:** RE: 2700 Lone Oak Fund v Sloat Holdings (SF CGC-25-622590): Letter from Receiver Kevin Singer

Hi Raelynn,

Thank you for your email and for this additional information. The issue we are trying to unwind is that the tenant prepaid their rents through August 2025, and we have not seen any evidence showing that the 2025 prepayments have already been consumed, and so those funds need to be turned over to the Receiver.

On or about October 31, 2024, 2700 Sloat Holdings, LLC ("**Owner**") and Sloat Garden Center, Inc. ("**Tenant**") executed the attached Second Amendment to Commercial Lease which, *inter alia*, called for Tenant to wire $274,615.37 to Owner by 5 PM on 11/4/24, which amount constitutes prepaid rents for November 2024 through April 2025. On November 1, 2024, Tenant wired that amount to Owner.

On or about December 31, 2024, Owner and Tenant executed the attached Third Amendment to Commercial Lease which, *inter alia*, called for Tenant to wire $140,969.22 to Owner by 5 PM on that same date, which amount constitutes prepaid rents for May through August 2025. On December 30, 2024, Tenant wired that amount to Owner.

The Receiver was appointed in late February. Accordingly, at minimum, Owner held six months of rent for the post-appointment period, which funds need to be turned over to the Receiver. If you contend that all such funds were already spent, we will need comprehensive records detailing the expenditures—bank statements, general ledgers, etc.

Finally, your email concludes by suggesting that the Receiver would have received a lease payment from Tenant for March 2025. Would you please elaborate on that statement, given that you had the Tenant prepay the March rent to you last fall?

**Jackson Wyche** *for*
Receivership Specialists

Direct (424) 276-2504
Southern California (310) 552-9064
Northern California (415) 848-2984
Arizona (602) 343-1889
Nevada (702) 562-4230
www.ReceivershipSpecialists.com

# EXHIBIT “6”

**Jackson Wyche**

| | |
|---|---|
| **From:** | Mark S. Hall, Esq. <mark@estavillolaw.com> |
| **Sent:** | Thursday, April 17, 2025 7:31 PM |
| **To:** | Jackson Wyche |
| **Cc:** | Nicole Gibson |
| **Subject:** | RE: Lone Oak Fund, LLC v 2700 Sloat Holding LLC et.al / County of San Francisco Superior Court Case Number CGC-25-622590 |

Hi Jackson-

Let me circle back to Raelynn.

**Mark S. Hall, Esq.**
Senior Attorney | **Estavillo Law Group**

(510) 982-3001 | (949) 991-2057
(510) 982-3002
mark@estavillolaw.com
www.estavillolaw.com

**555 12th Street, Suite 1280**
**Oakland, CA 94607**

**1301 Dove Street, Suite 920**
**Newport Beach, CA 92660**

CONFIDENTIALITY CAUTION: This message is intended only for the use of the addressee(s) and may contain privileged or confidential information. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at our costs.

**From:** Jackson Wyche <Jackson@receivershipspecialists.com>
**Sent:** Thursday, April 17, 2025 3:07 PM
**To:** Mark S. Hall, Esq. <mark@estavillolaw.com>
**Cc:** Nicole Gibson <nicole@estavillolaw.com>
**Subject:** RE: Lone Oak Fund, LLC v 2700 Sloat Holding LLC et.al / County of San Francisco Superior Court Case Number CGC-25-622590

CAUTION:This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Mark,

I hope all is well. Circling back on the correspondence below to see if you have any updates from your client.

Thank you,

**Jackson Wyche** *for*
Receivership Specialists

| | |
|---|---|
| Direct | (424) 276-2504 |
| Southern California | (310) 552-9064 |
| Northern California | (415) 848-2984 |
| Arizona | (602) 343-1889 |
| Nevada | (702) 562-4230 |

www.ReceivershipSpecialists.com

The information contained in this e-mail message may be privileged, confidential, and protected from disclosure. If you are not the intended recipient, any dissemination, distribution, or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender

---

**From:** Mark S. Hall, Esq. <mark@estavillolaw.com>
**Sent:** Wednesday, April 2, 2025 8:21 AM
**To:** Jackson Wyche <Jackson@receivershipspecialists.com>
**Cc:** Nicole Gibson <nicole@estavillolaw.com>
**Subject:** RE: Lone Oak Fund, LLC v 2700 Sloat Holding LLC et.al / County of San Francisco Superior Court Case Number CGC-25-622590

Thanks Jackson. Let me circle back to Raelynn and see what she has.

**Mark S. Hall, Esq.**
Senior Attorney | **Estavillo Law Group**

(510) 982-3001 | (949) 991-2057
(510) 982-3002
mark@estavillolaw.com
www.estavillolaw.com

**555 12th Street, Suite 1280**
**Oakland, CA 94607**

**1301 Dove Street, Suite 920**
**Newport Beach, CA 92660**

CONFIDENTIALITY CAUTION: This message is intended only for the use of the addressee(s) and may contain privileged or confidential information. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at our costs.

---

**From:** Jackson Wyche <Jackson@receivershipspecialists.com>
**Sent:** Tuesday, April 1, 2025 3:02 PM
**To:** Mark S. Hall, Esq. <mark@estavillolaw.com>
**Cc:** Nicole Gibson <nicole@estavillolaw.com>
**Subject:** RE: Lone Oak Fund, LLC v 2700 Sloat Holding LLC et.al / County of San Francisco Superior Court Case Number CGC-25-622590

CAUTION:This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Mark,

Thank you for your email and for looking into this issue for us.

The Receiver was appointed to manage real property, and the tenant has provided evidence showing that it prepaid rents through August 2025 to your client at the end of last year. We have requested turnover, and your client has stated that the funds were spent on the Property's operations. Although your client's emails have identified certain amounts purportedly paid, we need to verify and trace the funds, because at the moment all we have are written representations and a few invoices. At minimum, we will need all of 2700 Sloat Holdings, LLC's bank statements from January 2024 to present, as well as general ledgers for the same period, as I previously directed Raelynn to provide in my March 18, 2025 email. So long as I am able to review those records and confirm to the Receiver's satisfaction that the funds were actually spent on the Property and that no additional funds remain, this inquiry will be resolved.

I was also concerned by the statement at the end of Raelynn's March 18, 2025 email that she "assume[d] that the Receiver has received the lease payment from the Sloat Garden Center for March 2025"—which is difficult to reconcile with the documents I have reviewed demonstrating that the rents were prepaid through August 2025, ergo there is no March 2025 rent payment, which Raelynn would have known at the time she sent me her email. That statement leads me to question whether there is something else going on here, either on the tenant's end or on your client's.

I am not saying that your client has engaged in any misbehavior, but allegations of prepaid rents which were consumed prior to the Receiver's appointment are a fairly common tactic we see deployed in rents and profits receiverships, and we have to do our due diligence to ensure we have taken control of all of the Receivership Estate assets.

Thank you,

**Jackson Wyche** *for*
Receivership Specialists

| | |
|---|---|
| Direct | (424) 276-2504 |
| Southern California | (310) 552-9064 |
| Northern California | (415) 848-2984 |
| Arizona | (602) 343-1889 |
| Nevada | (702) 562-4230 |

www.ReceivershipSpecialists.com

The information contained in this e-mail message may be privileged, confidential, and protected from disclosure. If you are not the intended recipient, any dissemination, distribution, or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender

---

**From:** Mark S. Hall, Esq. <mark@estavillolaw.com>
**Sent:** Monday, March 31, 2025 6:34 PM
**To:** Jackson Wyche <Jackson@receivershipspecialists.com>
**Cc:** Nicole Gibson <nicole@estavillolaw.com>
**Subject:** RE: Lone Oak Fund, LLC v 2700 Sloat Holding LLC et.al / County of San Francisco Superior Court Case Number CGC-25-622590

Hi Jackson-

After looking at the email exchanges over the past few weeks, I note that your issue is the "prepaid rent" from last November and December, but I also see Raelynn's detailed email explanation to you of March 18, 2025. (Email directed to Louise Dawson, Kevin Singer, Jackson Wyche and jh@lifrtimeaffordablehousing.org)
(NOTE: I believe her position is that you are focusing on the timing ***when*** funds were distributed as opposed to focusing on ***accounting*** for the funds that were distributed.)

Raelynn intends that all tenant funds received from the 2700 Sloat tenant in 2024 were spent paying the lender or other authorized required bills. That detailed explanation is laid out in the March 18, 2025, email. She further contends that there has been no 2700 Sloat tenant revenue in 2025.

It appears that she supplied you with the property tax bills, insurance documents, and other documents for payments made or other bills.

Based on Raelynn's detailed March 18, 2025, accounting explanation for calendar year 2024, the documents, she is already sent to your office and assuming that the characterization of "prepaid rent" has been clarified by the March 18, 2025 accounting explanation, what specific additional information and/or documents do you need from November and December 2024 for clarification?

Look forward to working with you.

**Mark S. Hall, Esq.**
Senior Attorney | **Estavillo Law Group**

(510) 982-3001 | (949) 991-2057
(510) 982-3002
mark@estavillolaw.com
www.estavillolaw.com

**555 12th Street, Suite 1280**
**Oakland, CA 94607**

**1301 Dove Street, Suite 920**
**Newport Beach, CA 92660**

CONFIDENTIALITY CAUTION: This message is intended only for the use of the addressee(s) and may contain privileged or confidential information. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at our costs.

**From:** Jackson Wyche <Jackson@receivershipspecialists.com>
**Sent:** Friday, March 28, 2025 11:04 AM
**To:** Mark S. Hall, Esq. <mark@estavillolaw.com>
**Cc:** Nicole Gibson <nicole@estavillolaw.com>
**Subject:** RE: Lone Oak Fund, LLC v 2700 Sloat Holding LLC et.al / County of San Francisco Superior Court Case Number CGC-25-622590

CAUTION:This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Mark, welcome aboard, I am pleased to hear that you have been retained.

The key issue we are trying to sort out is what happened to the prepaid rents that the tenant apparently paid to your client last November and December. Raelynn alleged that the rents were spent on the property, and I have requested further records to verify the expenditures (because the Receiver has an obligation to ensure he takes control of all of the Receivership Estate assets).

I had previously set a response deadline of close of business today, but given your retention I'll extend the deadline to COB next Thursday (4/3/25). Please let me know if there is anything you need from the Receiver's office.

Would you please send me your substitution of counsel when possible? I'd like to update our service list and records.

Thank you,

**Jackson Wyche** *for*
Receivership Specialists

Direct (424) 276-2504
Southern California (310) 552-9064
Northern California (415) 848-2984
Arizona (602) 343-1889
Nevada (702) 562-4230
www.ReceivershipSpecialists.com

The information contained in this e-mail message may be privileged, confidential, and protected from disclosure. If you are not the intended recipient, any dissemination, distribution, or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender

---

**From:** Mark S. Hall, Esq. <mark@estavillolaw.com>
**Sent:** Friday, March 28, 2025 10:59 AM
**To:** Jackson Wyche <Jackson@receivershipspecialists.com>
**Cc:** Nicole Gibson <nicole@estavillolaw.com>
**Subject:** Lone Oak Fund, LLC v 2700 Sloat Holding LLC et.al / County of San Francisco Superior Court Case Number CGC-25-622590

Jackson:

This was recently retained by 2700 Sloat Holding LLC and Ms. Hickey in connection with the above referenced matter. She is asked our office to take a look at a series of email exchanges and documents she provided to you for accounting purposes. Let me take a look at everything and get back to you.

Look forward to working with you.

ESTAVILL
LAW GRO

**Mark S. Hall, Esq.**
Senior Attorney | **Estavillo Law Group**

(510) 982-3001 | (949) 991-2057
(510) 982-3002
mark@estavillolaw.com
www.estavillolaw.com

**555 12th Street, Suite 1280**
**Oakland, CA 94607**

**1301 Dove Street, Suite 920**
**Newport Beach, CA 92660**

CONFIDENTIALITY CAUTION: This message is intended only for the use of the addressee(s) and may contain privileged or confidential information. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at our costs.

# EXHIBIT “7”

ESTAVILLO LAW GROUP

510-982-3001 (Oakland)
949-991-2057 (Newport Beach)
510-982-3002
mark@estavillolaw.com

April 22, 2025

*Via Email and U.S. Mail*

Jackson Wyche
Receivership Specialist
1 Sansome Street
Suite 3500
San Francisco, CA 94104
Jackson@receivershipspecialists.com

**Re: *Lone Oak Fund, LLC v. 2700 Sloat Holding LLC, et.al.***
***County of San Francisco Superior Court Case Number CGC-25-622590***

Dear Mr. Wyche:

Prior to our office's engagement, you, or someone in the Receiver's office, communicated with Raelynn Hickey, CEO of 2700 Sloat, LLC, requesting information concerning prepaid rents from their tenant. This request resulted in Ms. Hickey's correspondence of March 10, 2025, with Kevin Singer, the court-appointed Receiver, in connection with the above-referenced matter.

After our office was formally retained by 2700 Sloat, LLC, and we filed a responsive pleading on their behalf, we exchanged electronic communication and you specifically articulated that you were requesting bank statements and general ledgers, which would reflect verification of expenditures of the prepaid rents through August 2025 for the tenant, Sloat Garden Center. I immediately conveyed this information to Ms. Hickey; she has asked me to convey her response on behalf of 2700 Sloat, LLC.

In essence, Ms. Hickey has nothing to add to her prior response to Mr. Singer. Neither she nor 2700 Sloat, LLC has kept any "general ledgers," as the entity purchased the property as an investment to be developed at a later point in time. They did not "operate" the property and only had one tenant, Sloat Garden Center. Since 2700 Sloat LLC did not operate Sloat Garden Center, they had nothing to do with building maintenance, expenses, etc. Sloat Garden Center and 2700 LLC are completely unrelated entities with no commonality of personnel or ownership interests. The rent received by 2700 Sloat, LLC from Sloat Garden Center was used to pay the property taxes and the loan from Plaintiff, Lone Oak Fund, LLC.

ESTAVILLO LAW GROUP

510-982-3001 (Oakland)
949-991-2057 (Newport Beach)
510-982-3002
mark@estavillolaw.com

You admittedly already have verification of the amount of money paid by Sloat Garden Center through August 2025. Payment of property taxes can be verified through public records. It is Ms. Hickey's understanding that you have documentation from Lone Oak Fund, LLC, reflecting payments made by 2700 Sloat, LLC.

Therefore, it is Ms. Hickey's position that the receiver has all the information available to verify that the prepaid rents received through August 2025 have been applied to property taxes and the Lone Oak Fund, LLC loan. There are no additional documents to produce.

Should you like to discuss the matter further, feel free to contact me.

Sincerely,

*Mark S. Hall*

Mark S. Hall, Esq.

**ESTAVILLO LAW GROUP**

MSH/acg

# CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2025, a true and correct copy of **COMPENDIUM OF EVIDENCE IN SUPPORT OF SECURED CREDITOR LOAN OAK FUND, LLC'S MOTION TO EXCUSE COMPLIANCE WITH TURNOVER OF CERTAIN REAL PROPERTY SUBJECT TO STATE COURT RECEIVERSHIP PURSUANT TO BANKRUPTCY CODE § 543(d)** was served via the United States District Court CM/ECF system and/or electronic mail on all parties or persons requiring notice:

- SIMON ARON saron@wrslawyers.com
- CHAPTER 11 - RN USTPRegion17.RE.ECF@usdoj.gov
- J CRAIG DEMETRAS mail@demetras-oneill.com, jcd@demetraslaw.com
- ELSA M. HOROWITZ ehorowitz@wrslawyers.com, jlee@wrslawyers.com
- ROYI MOAS rmoas@wrslawyers.com, mshield@wrslawyers.com
- U.S. TRUSTEE - RN - 11 USTPRegion17.RE.ECF@usdoj.gov
- JARED A. DAY jared.a.day@usdoj.gov

By Jean Lee

Jean Lee, an Employee of
WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP