DEMETRAS LAW
J. Craig Demetras
Nevada Bar. No. 4246
230 E. Liberty Street
Reno, NV 89501
(Telephone): 775-348-4600
jcd@demetraslaw.com
mail@demetraslaw.com

Attorney for Debtor In Possession

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| IN RE<br><br>2700 SLOAT HOLDING, LLC<br><br>Debtor-in-Possession,<br>_______________________________/ | BK-N-25-50584-hlb<br><br>Chapter 11<br><br>**OBJECTION TO MOTION OF SECURED CREDITOR LOAN OAK FUND, LLC TO EXCUSE COMPLIANCE WITH TURNOVER OF CERTAIN REAL PROPERTY SUBJECT TO STATE COURT RECEIVERSHIP PURSUANT TO BANKRUPTCY CODE § 543(D); MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS IN SUPPORT OF THEREOF**<br><br>Hearing Date: September 9, 2025<br>Hearing Time: 2:30 p.m. |

The Debtor, 2700 Sloat Holding, LLC (hereinafter "Sloat") by and through its counsel, J. Craig Demetras, of Demetras Law, hereby files its Objection to Motion of

Secured Creditor Lone Oak Fund, LLC to Excuse Compliance with Turnover of Certain Real Property subject to State Court Receivership Pursuant to Bankruptcy Code § 543(d); Memorandum of Points and Authorities and Declarations in Support of Thereof [Doc # 41] filed on August 11, 2025. Based upon a review of the pleadings on file and the declaration of Raelyn Hickey, the CEO of the Debtor, 2700 Sloat Holding, LLC, a brief history of the parties in this case is as follows:

1. In December 2020, the Debtor purchased property located at 2700 Sloat Blvd, San Francisco, California 94116 from Sloat Garden Center, Inc., for $8,750,000

2. The property consists of a city block that is sub-divided into two legal parcels of about 38,000 square feet with an 8,000 square foot retail building.

3. In 2021, the Debtor borrowed $4,750,000 on a one year note from Aminam, LLC for development expenses with an interest reserve of approximately $498,750.

4. In July 2022, Aminam arranged for a $10,000,000 loan with Lone Oak for the Debtor. At the close of escrow, Aminam received $5,766,000 as full payment of their loan. Daniel Namvar received $125,000 Loan Origination Fee and Lone Oak received a $125,000 Origination Fee. The approximate $4,000,000 balance of loan proceeds remained with Lone Oak to be used for $3,000,000 for development expense hold back and $960,000 interest reserve hold back.

5. As of August 3, 2022, the Debtor had paid off the $5,766,000 balance of the 2021 first Aminam Loan and no funds had been advanced by Aminam to the Debtor pursuant to the new $3,000,000 Aminam note and deed of trust until February 2024 when Aminam funded the Debtor $44,000 for development expenses. The Debtor has not

received any subsequent funds from Aminam, despite the undocumented claim made by James Rothstien in his Declaration.

6. In order to close the escrow on the Lone Oak loan, Aminam told me that Lone Oak required me to sign a note and deed of trust in the same escrow to Aminam for $3,000,000 notwithstanding the fact that Aminam was receiving $6,000,000 for their $4,750,000 loan agreement entered a year before the escrow.

7. The Debtor has not received any monthly statements from Aminam and Aminam has not cooperated with formal payment demands from the title company, and as such the Debtor has not been, and is not able to refinance the property to payoff the Lone Oak $10,000,000 loan. New lenders need to have their security liens recorded in a senior position and without being able to get a payoff demand from Aminam, the property is "locked up". Debtor cannot get title insurance on the property to support a new loan to payoff any of the currently secured liens on the property and Lone Oak is responsible for creating and at least participating in this serious problem for Debtor, especially since their loan and the Aminam $3,000,000 second lien shared the same Title Company Escrow, Order Number, and had the title company record them both simultaneously and sequentially.

8. In 2022, Lone Oak paid themselves the monthly interest payments from the interest hold back in the amount of approximately $40,000 a month.

9. As was required, the Debtor first paid ongoing development expenses from the company accounts. The Debtor would then submit the reimbursement requests which

included vendor invoices and Proof of Payment receipts, to Lone Oak intermittently. After Lone Oak reviewed the submitted invoices and receipts/proofs of payment included in the Development Reserve Funding Request, these reimbursements were paid to the Debtor and applied by Lone Oak against the development expense holdback reserve, which would then increase the outstanding principal balance of the Lone Oak loan to Debtor.

10. By November, 2023, the monthly interest payments were increased to $57,500 through September 2024.

11. In September, 2024 the payment increased to $74,166.67, partly due to Lone Oak increasing the payable Interest Rate on the outstanding Principal Balance going forward to a rate of interest of 8.9%.

12. In 2024 Debtor paid two separate cash payments of $50,000 for loan extensions with an additional $75,000 paid and taken out of the interest reserve in January, 2024.

13. After the interest reserve ran out in February, 2024, the Debtor paid the monthly payments current through December 31, 2024.

14. After the interest reserve ran out in 2024, including the $100,000 in extension Fees and $663,591 in mortgage payments, the Debtor paid Lone Oak a total of $763,591.

15. During 2024, the Debtor collected $777,194 in rent payments from the tenant, Sloat Garden Center which were subject to the Assignment of Rents, which Debtor originally agreed to as a condition of the loan from Lone Oak.

16. In April 2024, the Debtor paid the $53,146 property tax payment. Including the

property tax payment, the Debtor paid approximately $40,000 more than the rents received in 2024.

17. Lone Oak filed a Notice of Default on February 12, 2025.

18. On February 26, 2025 Lone Oak obtained an order appointing a receiver.

19. Based upon notice received from Loan Oak, the current monthly payments are $200,000 at the default rate of 24%.

20. The Debtor, 2700 Sloat Holding, LLC filed this Chapter 11 bankruptcy case on June 26, 2025. See ECF No. 1. [1]

21. The Debtor attended the Meeting of Creditors under 11 U.S.C. 341(a) which was conducted and concluded on August 4, 2025; See ECF Nos. 3 and 39.

22. Lone Oak filed its Motion on August 11, 2025 ECF. No. 41. A hearing on the motion is set for September 9, 2025. ECF No. 46.

23. Lone Oak filed its Motion for Relief from Stay on August 26, 2025. ECF No.48. A hearing on the motion is set for September 23, 2025.

24. On August 27, 2025, the Debtor received an offer, pending court approval, for a post-petition loan in the amount of $2.25M secured by a first deed of trust on 2700 Sloat Blvd property with 2 points origination fee, 10% interest, with a 24 month term. The commitment expires on September 30, 2025.

25. The offer is subject to a review of the status of the lease, the title insurance on the property, and a first position lien on the property.

---

[1] Debtor requests that the Court take judicial notice of Debtor's Petition, schedules, Statement of Financial Affairs, and other documents filed therewith, and any amendments thereto which are in the Court's file in this case under Fed. R.. Evid. 201, as made applicable by Fed. R. Bankr. P. 9017. The information contained in these documents, signed under penalty of perjury by Debtor, are admissions of Debtor under Fed. R. Evid. 801(d). "ECF No. __" refers to documents filed ion the bankruptcy docket for the above-captioned Chapter 11 case.

## MEMORANDUM

In this case 2700 Sloat Holding, LLC, is a Chapter 11 debtor-in-possession who is in custody and control of estate property and whose duties include making an accounting of the estate property. The bankruptcy court has exclusive jurisdiction over the Debtor and the property of the estate. The state court receiver cannot assume the duties and obligations of the debtor-in-possession. The mandate of Sections 543(a) and (b) requiring the receiver to turnover to the debtor-in-possession the property of the estate is embodied in "a policy favoring the turnover of business assets to the debtor in chapter 11 reorganizations. In re Wallace, 2011Bankr. LEXIS 4382, citing In re Orchards Village Invs. LLC, 405 B.R. 341, 352 (Bankr.D.Or. 2009).

In a review of the case law indicates the factors that the Court should consider to excuse receiver's compliance with sections 543(a) and (b) are as follows:

1. Whether there will be sufficient income to fund a successful reorganization;
2. Whether the debtor will use the property for the benefit of creditors; and
3. Whether there has been mismanagement of estate property prior to the receivership; and
4. Whether the receiver has acted appropriately and expeditiously re Wallace, ibid. ; In re Madison Ave. Ltd. P'ship. 213 B.R. 888, 895-98 (Bankr. S.D. Ga. 1992)

Lone Oak has failed to comply with the terms of the state court Order Appointing Receiver. A copy of the Order is attached hereto and incorporated herein as Exhibit "A." Paragraph 27(c) of the Order provides that the receiver shall have the following

duties:

> Turnover property if no motion for relief is filed within 10 days after notice of the bankruptcy. If the party who obtained the receivership fails to file a motion with 10 days after his or her receivership of notice of the bankruptcy filing, the receiver shall immediately turn over the property of the appropriate entity either to the trustee in bankruptcy if one has been appointed or if not, to the debtor in possession and otherwise comply with 11 United States Code section 543.

Pursuant to Paragraph 27(b) even if Loan Oak had timely filed the pending motions, the receiver may only collect rents, make distributions to preserve and protect the property, and may not do anything that would effect a material change in the circumstances of the property.

The Debtor has timely filed its schedules and statements and has attended the 341 hearing. The rental income received from the Debtor's tenant, Sloat Garden Centers, Inc., in 2024, is included in the Debtor's statement of financial affairs. ECF No. 26 page 18. A copy of which is attached hereto as Exhibit "B." A summary of the rental income and payments to Lone Oak is outlined above.

There are no allegations of post-petition mismanagement and no allegations of pre-petition mismanagement of the property other than the failure to pay the Lone Oak note and property taxes current.

As indicated above, the Debtor is proceeding to obtain the proper approval and permits to proceed with the development of the property to obtain the highest use and value of property.

Lone Oak has filed a motion for relief from stay which is set for September 23, 2025.

The issues and criteria for bankruptcy court review under section 543 and section 362 are intertwined. Based upon the foregoing, it is questionable whether Loan Oak can show that the Debtor has no equity in the property based upon the Debtor's assessment of the Aminam lien. The Debtor believes that the evidence will show the debtor has equity in the property without the purported two million dollar lien by Aminam.

In In re Timbers of Inwood Forest Associates, Ltd, 808 F.2d.363 (5th Cir. 1987) the court held that under § 362(d)(2), a secured creditor could obtain relief from the automatic stay if the debtor had no equity in the collateral and the collateral was not necessary for an effective reorganization. Loan Oak has the burden on the issue of equity in the property. 11 U.S.C. 362(g). The Timbers court highlighted that the automatic stay is intended to benefit debtors actively pursuing reorganization, and relief is appropriate when reorganization is unlikely. Loan Oaks hearing on its motion for relief from stay is early in the case without the availability for a full blown evidentiary hearing. At this stage of the proceeding, the bankruptcy court should apply the reasonable possibility of successful reorganization standard with somewhat more indulgence than would be appropriate if the motion were made at a later stage in the proceedings. In re Timbers of Inwood Forest Associates, Ltd, 808 F.2d.363, 363.

## CONCLUSION

Wherefore, the Debtor requests that Lone Oak's motion is denied, or in the alternative, that the decision on the § 543 issue be continued to the hearing on the § 362

motion to allow for an evidentiary hearing.

DATED this 27th day of August, 2025.

DEMETRAS LAW
/s/ J. Craig Demetras
By: J. Craig Demetras

# CERTIFICATE OF SERVICE

I hereby certify that I am an employee of Demetras Law and that on August 27, 2025, the foregoing document was served via ECF automated system to all ECF registered parties existing in this case.

Dated: August 27, 2025.

/s/ Julie Ann Raum
Employee of Demetras Law

# EXHIBIT "A"

EXHIBIT "A"

RC-200

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):
SIMON ARON (SBN 108183); ELSA HOROWITZ (SBN 195689)
WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
11400 West Olympic Boulevard, 9th Floor
Los Angeles, CA 90064-1582
TELEPHONE NO.: (310) 478-4100 FAX NO. (Optional): (310) 479-1422
E-MAIL ADDRESS (Optional): saron@wrslawyers.com; ehorowitzwrslawyers.com
ATTORNEY FOR (Name): Plaintiff Lone Oak Fund, LLC

FOR COURT USE ONLY

FILED
San Francisco County Superior Court
FEB 26 2025
CLERK OF THE COURT
By: [signature] Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco, 94102-4515
BRANCH NAME: Civic Center Courthouse

PLAINTIFF: Lone Oak Fund, LLC

DEFENDANT: 2700 Sloat Holding LLC, et al.

**EX PARTE ORDER APPOINTING RECEIVER AND ORDER TO SHOW CAUSE [X] AND TEMPORARY RESTRAINING ORDER—RENTS, ISSUES, AND PROFITS**

CASE NUMBER: CGC-25-622590

## NOTICE OF HEARING

| Date: 3/25/2025 | Time: 9:30 a.m. | Dept.: 501 | Room: |
|---|---|---|---|

The address of the court [X] is shown above [ ] is *(specify)*:

## ORDER TO SHOW CAUSE

1. **To defendant** *(name each)*: 2700 SLOAT HOLDING LLC, a Nevada limited liability company; and AMINAM, LLC, a California limited liability company

2. **THE COURT ORDERS** the defendants named in item 1 to appear in this court at the date, time, and place shown in the box above to give any legal reason
   a. Why a receiver should not be confirmed to
      (1) take possession and continue in possession of the property described in Attachment 2a *(attach a description of the real and personal property subject to the receivership) (the "property")*, and
      (2) manage the property in accordance with this order until further order of this court.
   b. Why you should not be prohibited from controlling or receiving any income from the property described in Attachment 2a.

## ORDER APPOINTING RECEIVER

**THE COURT ORDERS, pending the hearing on the Ex Parte Order to Show Cause, the following:**

3. **Receiver.** *(Name):* Kevin Singer
   is appointed as receiver to take possession of the property described in Attachment 2a.

4. **Receiver's oath and bond.** The receiver shall immediately, and before performing any duties:
   a. execute and file a receiver's oath, and
   b. file the bond required by Code of Civil Procedure section 567(b) in the amount of: $ 10,000.00

5. **Receiver's fees.** The receiver may charge for the receiver's services no more than *(check all that apply)*:
   a. [X] $350.00 [ ] per month [X] per hour [ ] other *(specify)*:
   b. [ ] percent of gross monthly rents
   c. [ ] the greater of a or b
   d. [ ] $ as a one-time start-up fee

6. [X] **Management company.** The receiver may employ the management company of *(name)*:

   a. [X] The receiver may pay the company not more than
      (1) [ ] $ [ ] per month [ ] per hour [ ] other *(specify)*:
      (2) [X] 5% percent of gross monthly rents
      (3) [ ] the greater of (1) or (2)
      (4) [ ] $ as a one-time start-up fee

   b. [ ] Management company fees are included in receiver's fees in item 5.

7. **Disclosure.** The receiver shall immediately disclose to all parties any financial relationship between the receiver and any company hired to assist in the management of the receivership property.

8. **Plaintiff's ex parte bond.** Plaintiff shall immediately file an applicant's bond under Code of Civil Procedure section 566(b) in the amount of: $10,000.00

9. **General duties.** After qualifying, the receiver
   a. shall take possession of and manage the property,
   b. shall collect the income from the property,
   c. shall care for the property and may incur the expenses necessary for that care, and
   d. may change the locks on the property.

10. **Prohibited agreements.** The receiver shall not enter into an agreement with any party to this action about the administration of the receivership or about any postreceivership matter.

11. **Inventory.** Within 30 days after qualifying, the receiver shall file an inventory of all property possessed under this order.

12. **Expenditures.** The receiver shall expend money coming into his or her possession to operate and preserve the property and only for the purposes authorized in this order. Unless the court orders otherwise, the receiver shall to the extent practical hold the balance in interest-bearing accounts in accordance with Code of Civil Procedure section 569.

13. **Leases and rentals.** The receiver may without court approval enter into leases for a term not exceeding one year, obtain and evict tenants, and set and modify the amounts and terms of leases.

14. **Security deposits.** Unless the security deposit has been turned over or paid to the receiver, the receiver shall not refund a deposit to a tenant.

15. **Monthly accounting of receiver's income, expenses, and fees.**
    a. The receiver shall each month prepare and serve on the parties, but not file, an accounting of the income and expenses incurred in the administration of the receivership property, including the receiver's fees and expenses.
    b. The receiver may pay the receiver's own fees and expenses only by the following procedures:
       (1) By serving on all parties a notice of intent to pay to which no objection is served on the receiver within 20 days of the date the notice is served.
       (2) By serving and filing a request for interim payment, which the court then approves.
       (3) By obtaining and filing an agreement among all the parties approving the payment, which the court then approves.
       (4) By filing the receiver's final accounting and report, which the court then approves.
    c. The receiver shall not reimburse the receiver for the receiver's general office administration expenses or overhead without court approval. These expenses include, for example, office supplies and employee payroll, benefits, and taxes.

16. **Management.**
    a. The receiver shall operate the property and take possession of all accounts relating to the property.
    b. The receiver may
       (1) employ agents, employees, clerks, accountants, and property managers to administer the receivership property, and
       (2) purchase materials, supplies, and services reasonably necessary to administer the receivership property.
    c. The receiver may do all the things, and incur the risks and obligations, ordinarily done or incurred by owners, managers, and operators of businesses and property similar to that possessed by the receiver; *except* the receiver shall not make any capital improvements to the property without prior court approval.

| PLAINTIFF (Name): Lone Oak Fund, LLC<br>DEFENDANT (Name): 2700 Sloat Holding LLC, et al. | CASE NUMBER:<br>CGC-25-622590 |
|---|---|

17. **Bank accounts.** The receiver
    a. may establish accounts at any financial institutions insured by an agency of the United States government that are not parties to this proceeding,
    b. shall deposit in those accounts funds received in connection with the receivership property, and
    c. shall deposit in interest-bearing accounts money not expended for receivership purposes.

18. **Court instructions.** The receiver and the parties may at any time apply to this court for further instructions and orders and for additional powers necessary to enable the receiver to perform the receiver's duties properly.

19. **Insurance.**
    a. The receiver shall determine upon taking possession of the property whether there is sufficient insurance coverage.
    b. The receiver shall notify the insurer that the receiver is to be named as an additional insured on each insurance policy on the property.
    c. If the receiver determines that the property does not have sufficient insurance coverage, the receiver shall immediately notify the parties and shall procure sufficient all-risk and liability insurance on the property (excluding earthquake and flood insurance).
    d. If the receiver does not have sufficient funds to obtain insurance, the receiver shall seek instructions from the court on whether to obtain insurance and how it is to be paid for.

20. **Employment of attorneys.**
    a. The receiver may employ unlawful detainer attorneys and eviction services without a court order.
    b. ☐ The receiver may employ counsel *(name):*
       at the hourly rate of: $
    c. ☐ Except as provided in items 20a and 27d, before employing counsel the receiver shall apply to the court for an order authorizing the receiver to employ counsel.

21. **Taxpayer ID numbers.** The receiver may use any federal taxpayer identification numbers relating to the property for any lawful purpose.

22. **Duty to turn over possession.** Upon receipt of a copy of a recorded trustee's deed upon foreclosure or written notice from plaintiff that defendant has cured the defaults existing under plaintiff's loan documents or that plaintiff has accepted a deed in lieu of foreclosure, the receiver shall, without further order of the court, turn over possession of the property to the successful purchaser or defendant or plaintiff respectively.

23. **Plaintiff's notification of termination.** Plaintiff shall notify the receiver in writing within 48 hours of any event within plaintiff's knowledge that terminates the receivership.

24. **Receiver's final report and account and discharge.**
    a. *Motion required.* Discharge of the receiver shall require a court order upon noticed motion for approval of the receiver's final report and account and exoneration of the receiver's bond.
    b. *Time.* Not later than 60 days after the receivership terminates, the receiver shall file, serve, and obtain a hearing date on a motion for discharge and approval of the final report and account.
    c. *Notice.* The receiver shall give notice to all persons of whom the receiver is aware who have potential claims against the receivership property.
    d. *Contents of motion.* The motion to approve the final report and account and for discharge of the receiver shall contain the following:
       (1) *Declaration or declarations.* A declaration or declarations: (i) stating what was done during the receivership, (ii) certifying the accuracy of the final accounting, (iii) stating the basis for the termination of the receivership (such as foreclosure or reinstatement), and (iv) stating the basis for an order for the distribution of any surplus or payment of any deficit.
       (2) *Accounting summary.* A summary of the receivership accounting, which shall include (i) the total revenues received, (ii) the total expenditures identified and enumerated by major categories, (iii) the net amount of any surplus or deficit, and (iv) evidence of necessary supporting facts.

25. **Plaintiff's notice to receiver.** Plaintiff shall promptly notify the receiver in writing of the names, addresses, and telephone numbers of all parties who appear in the action and their counsel. The parties shall give notice to the receiver of all events that affect the receivership.

26. **Bankruptcy Plaintiff's duty to give notice.** If a defendant files a bankruptcy case during the receivership, plaintiff shall give notice of the bankruptcy case to the court, to all parties, and to the receiver by the close of the next business day after the day on which plaintiff receives notice of the bankruptcy filing.

27. **Bankruptcy Receiver's duties.** If the receiver receives notice that a bankruptcy has been filed and part of the bankruptcy estate includes property that is the subject of this order, the receiver shall have the following duties:

   a. *Turn over property if no relief from stay will besought.* The receiver shall immediately contact the party who obtained the appointment of the receiver and determine whether that party intends to move in the bankruptcy court for an order for (1) relief from the automatic stay, and (2) relief from the receiver's obligation to turn over the property (11 U.S.C. § 543). If the party has no intention to make such a motion, the receiver shall immediately turn over the property to the appropriate entity either to the trustee in bankruptcy if one has been appointed or, if not, to the debtor in possession - and otherwise comply with 11 United States Code section 543.

   b. *Remain in possession pending resolution.* If the party who obtained the receivership intends to seek relief immediately from both the automatic stay and the receiver's obligation to turn over the property, the receiver may remain in possession and preserve the property pending the ruling on those motions (11 U.S.C. § 543(a)). The receiver's authority to preserve the property shall be limited as follows:

      (1) The receiver may continue to collect rents and other income;
      (2) The receiver may make only those disbursements necessary to preserve and protect the property;
      (3) The receiver shall not execute any new leases or other long-term contracts; and
      (4) The receiver shall do nothing that would effect a material change in the circumstances of the property.

   c. *Turn over property if no motion for relief is filed within 10 days after notice of the bankruptcy.* If the party who obtained the receivership fails to file a motion within 10 court days after his or her receipt of notice of the bankruptcy filing, the receiver shall immediately turn over the property to the appropriate entity either to the trustee in bankruptcy if one has been appointed or, if not, to the debtor in possession and otherwise comply with 11 United States Code section 543.

   d. *Retain bankruptcy counsel.* The receiver may petition the court to retain legal counsel to assist the receiver with issues arising out of the bankruptcy proceedings that affect the receivership.

28. **Failure to turn over property.** A receiver who fails to turn over the property in accordance with this order shall not be paid for time and expenses after the date on which the receiver should have turned the property over.

29. [X] **Other orders.** *(Additional orders may include authority of the receiver to do any other acts arising from special circumstances.)* Other orders [ ] are specified in Attachment 29 [X] are as follows *(specify)*:

Defendant and Nominal Defendant and their agents are not to be on the Subject Property or communicate with the staff, vendors, employees, etc. of the Subject Property without the Court Receiver's written consent.

| PLAINTIFF *(Name)*: Lone Oak Fund, LLC<br>DEFENDANT *(Name)*: 2700 Sloat Holding LLC, et al. | CASE NUMBER:<br>CGC-25-622590 |
|---|---|

## [X] TEMPORARY RESTRAINING ORDER

30. **THIS ORDER EXPIRES AT THE DATE AND TIME OF THE HEARING SHOWN IN THE BOX ON PAGE ONE (UNDER "NOTICE OF HEARING") UNLESS EXTENDED BY THE COURT.**

31. **THE COURT ORDERS DEFENDANT** to do the following:
    a. **Turn over property.** Immediately turn over possession of the property described in Attachment 2a to the receiver when the appointment becomes effective, including any security deposits, prepaid rent, other rental or lease payments, and funds in property management bank accounts for the property.
    b. **Turn over related items.** Immediately turn over to the receiver all keys, books, documents, and records relating to the property and advise the receiver of federal taxpayer identification numbers relating to the property.
    c. **Insurance.**
    (1) Immediately advise the receiver about the nature and extent of insurance coverage on the property;
    (2) Immediately name the receiver as an additional insured on each insurance policy on the property; and
    (3) DO NOT cancel, reduce, or modify the insurance coverage.

    d. **Restraints.** Refrain from
    (1) committing or permitting any waste on the property or any act on the property in violation of law or removing, encumbering, or otherwise disposing of any of the fixtures on the property;
    (2) demanding, collecting, or in any other way diverting or using any of the rents from the property;
    (3) interfering in any manner with the discharge of the receiver's duties under this order;
    (4) selling, transferring, disposing, encumbering, or concealing the property without a prior court order; and
    (5) doing any act that will impair the preservation of the property or plaintiff's interest in the property.

    e. [X] **Other** *(specify)*: Defendant and Nominal Defendant and their agents are not to be on the Subject Property or communicate with the staff, vendors, employees, etc. of the Subject Property without the Court Receiver's written consent.

32. **THE COURT ORDERS PLAINTIFF** to immediately file a temporary restraining order bond under Code of Civil Procedure section 529 in the amount of: $

33. [X] **OTHER ORDERS** [ ] are specified in Attachment 33 [X] are as follows *(specify)*:
(1) Directing Defendant, Nominal Defendant, and anyone holding under them, to deliver possession of the Subject Property and rents therefrom to the receiver;
(2) For a temporary restraining order enjoining the tenants of the Subject Property from paying any rents due from the Subject Property to Defendant, Nominal Defendant, or to any other party except the receiver;
(3) For funds received by the receiver to be distributed as follows:
    a. Costs to operate the Subject Property;
    b. Receivership fees and expenses to administer the receivership estate;
    c. Past due and current property taxes as needed; and
    d. Payment of Plaintiff's past-due mortgage payments and amounts due under the Plaintiff's deed of trust.

## SERVICE AND BRIEFING SCHEDULE

34. By *(date)*: 3/3/2025 **PLAINTIFF IS ORDERED** to personally serve on each defendant or counsel and any other appearing parties, and to file proof of service of, the summons and complaint, the memorandum of points and authorities, these orders, and all declarations and supporting papers.

35. By *(date)*: 3/11/2025 **DEFENDANT IS ORDERED** to personally serve on each plaintiff or counsel and any other appearing parties, and to file proof of service of, any opposition to these orders.

36. By *(date)*: 3/18/2025 **PLAINTIFF IS ORDERED** to personally serve on each defendant or counsel, and to file proof of service of, any reply to defendant's opposition to these orders.

37. Number of pages attached: 1

Date: 2/26/2025

[signature] CHARLES F. HAINES
JUDGE OF THE SUPERIOR COURT

MC-025

| SHORT TITLE: Lone Oak Fund, LLC v. 2700 Sloat Holding LLC, et al. | CASE NUMBER: CGC-25-622590 |
|---|---|

**ATTACHMENT** *(Number)*: 2a

*(This Attachment may be used with any Judicial Council form.)*

The real property situated in the County of San Francisco, State of California, commonly known as 2700 - 2750 Sloat Boulevard, San Francisco, California 94116 (the "Subject Property"), legally described as follows:

LOTS 7 AND 8, AS SHOWN ON THE CERTAIN MAP ENTITLED, "PARCEL MAP, BEING A MERGER AND RESUBDIVISION OF THE LANDS DESCRIBED IN GRANT DEEDS, F919 OFFICIAL RECORDS, PAGE 614 AND F669, OFFICIAL RECORDS, PAGE 475, ALSO BEING A MERGER AND RESUBDIVISION OF ASSESSOR'S LOTS 2-A, 4, 5 AND 6, ALSO BEING ALL OF ASSESSOR'S BLOCK NO. 2514, ALSO BEING ALL OF SUNSET BLOCK NO. 1285, SAN FRANCISCO, CALIFORNIA", WHICH MAP WAS FILED FOR RECORD IN THE OFFICE OF THE RECORDER OF THE CITY AND COUNTY OF SAN FRANCISCO, STATE OF CALIFORNIA, ON MARCH 12TH, 1999, IN BOOK 44 AT PAGE 10, OF PARCEL MAPS.

ASSESSOR'S PARCEL NUMBER: Block 2514 Lot 007 and Block 2514 Lot 008.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*



Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

www.courtinfo.ca.gov
Westlaw Doc & Form Builder

# EXHIBIT "B"

EXHIBIT "B"

| Fill in this information to identify the case: |
|---|
| Debtor name 2700 SLOAT HOLDING, LLC |
| United States Bankruptcy Court for the: District of Nevada |
| Case number (If known): 25-50584 |

☐ Check if this is an amended filing

Official Form 207

# Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy 04/25

**The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).**

## Part 1: Income

**1. Gross revenue from business**

☐ None

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | | Sources of revenue (Check all that apply) | Gross revenue (before deductions and exclusions) |
|---|---|---|---|
| **From the beginning of the fiscal year to filing date:** | From ________ (MM / DD / YYYY) to Filing date | ☑ Operating a business ☐ Other | $ 0.00 |
| **For prior year:** | From 01/01/2024 (MM / DD / YYYY) to 12/31/2024 (MM / DD / YYYY) | ☑ Operating a business ☐ Other | $ 960,271.00 |
| **For the year before that:** | From 01/01/2023 (MM / DD / YYYY) to 12/31/2023 (MM / DD / YYYY) | ☐ Operating a business ☐ Other | $ 390,300.00 |

**2. Non-business revenue**

Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☑ None

| | | Description of sources of revenue | Gross revenue from each source (before deductions and exclusions) |
|---|---|---|---|
| **From the beginning of the fiscal year to filing date:** | From ________ (MM / DD / YYYY) to Filing date | ________ | $________ |
| **For prior year:** | From ________ (MM / DD / YYYY) to ________ (MM / DD / YYYY) | ________ | $________ |
| **For the year before that:** | From ________ (MM / DD / YYYY) to ________ (MM / DD / YYYY) | ________ | $________ |