ROYI MOAS (State Bar No. 10686)
rmoas@wrslawyers.com
WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
3773 Howard Hughes Parkway, Suite 590
South Las Vegas, Nevada 89169
Telephone: (702) 341-5200
Facsimile: (702) 341-5300

SIMON ARON (CA State Bar No. 108183) (admitted pro hac vice)
saron@wrslawyers.com
ELSA M. HOROWITZ (CA State Bar No. 195689) (admitted pro hac vice)
ehorowitz@wrslawyers.com
WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
11400 West Olympic Boulevard, 9th Floor
Los Angeles, California 90064-1582
Telephone: (310) 478-4100
Facsimile: (310) 479-1422

Attorneys for Secured Creditor
LONE OAK FUND, LLC

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>2700 SLOAT HOLDINGS, LLC,<br><br>Debtor. | Case No. 25-50584-gs<br><br>Chapter 11<br><br>**REPLY TO OBJECTION TO MOTION OF SECURED CREDITOR LOAN OAK FUND, LLC FOR RELIEF FROM THE AUTOMATIC STAY**<br><br>*[Evidentiary Objections Filed Concurrently Herewith]*<br><br>Judge: Hon. Gary A. Spraker<br><br>Hearing Information:<br>Date: September 23, 2025<br>Time: 1:30 p.m.<br>Place: Zoom Hearing |

**COMES NOW** Lone Oak Fund, LLC, a California limited liability company, the movant herein ("Lone Oak" or "Movant"), and replies to the Objection ("Objection") of debtor 2700 Sloat Holding, LLC (the "Debtor") to Lone Oak's Motion for an order granting relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) &(2) (the "Motion") with respect to that certain real property located at 2700-2750 Sloat Boulevard,

San Francisco, California 94116 (the "Property").

## I.

## INTRODUCTION

The Debtor's Objection is woefully inadequate as it fails to rebut or refute the basic elements established in the Motion for granting of relief from the automatic stay pursuant to Sections 362(d)(1) and (2) of 11 U.S.C. § 101 *et seq.* (the "Code"). The Motion established that relief is necessary and appropriate for the following reasons: (i) "cause" exists including a lack of adequate protection of Lone Oak's interest in the Property; (ii) "cause" further exists because of the lack of good faith in the filing of the Debtor's voluntary petition, including, but not limited to the Debtor's principal absconding with over $415,000.00 in pre-petition rents and failing to account or explain the loss of those funds despite State Court orders to do so; (iii) "cause" further exists to lift the stay where Debtor has no income or substantially negative monthly net income and Debtor cannot reorganize its debts without sufficient monthly income; and, (iv) Debtor does not have any equity in the Property and an effective reorganization is not reasonably in prospect and therefore the Property is not necessary to an effective reorganization.

The Objection relies upon the Declaration of Raelynn Hickey ("Hickey"), which is replete with double speak and omits admissible testimony or evidence[1] in response to (a) the lack of adequate protection of Lone Oak's interest in the Property; (b) Debtor's lack of good faith in the filing of the Chapter 11 voluntary petition initiating this case; (c) the lack of sufficient income upon which a reorganization should be based; and (d) the lack of equity in the Property and absence of a reasonable probability that a plan can be confirmed in this case in a reasonable time.

[1] Hickey's Declaration includes inadmissible testimony and a lack of admissible documents to support her statements and contentions. Lone Oak has concurrently filed evidentiary objections to the Hickey Declaration.

## II.

## THE OBJECTION OMITS FACTS ESTABLISHING A DEFENSE TO THE MOTION

The Objection omits and therefore concedes the facts upon which the Motion is based. To wit:

* In November and December of 2024, Debtor and Hickey collected from the Property's sole tenant, Sloat Garden Center ("Tenant"), prepaid rents for November 2024 through August 2025 in the amount of $415,584.59 (the "Prepaid Rents");

* None of the Prepaid Rents were used thereafter to pay real property taxes, mortgage payments to Lone Oak or to the junior lien holder, Aminam, or for the care, maintenance or preservation of the Property;

* Even after the State Court ordered the Debtor and Hickey to show cause why it should not be required to return or repay the Prepaid Rents (the "OSC"), the Debtor and Hickey completely failed to provide any explanation or accounting.[2] Instead Hickey provided an accounting of amounts paid to Lone Oak prior to December 31, 2024 and no accounting of the Prepaid Rents expended after January 1, 2025. Hickey engages in pure double speak asserting that the Debtor "later got reimbursed when enough restricted funds from the tenant were received by the Debtor". Hickey Declaration, p. 5, ll. 17-18.

Hickey's own Declaration contradicts the above statement by admitting "[A] review of any restrictions related to Lease Payments received by the Debtor…, would show that these collected payments were subject to restricted use of paying Lone Oak's monthly interest and a few other mandatory payments (property taxes, insurance, etc.)." Hickey Declaration, p. 4, ll. 15-20. Notwithstanding Hickey's admission that all such Prepaid Rents were restricted, it is undisputed that no taxes were paid by the Debtor for taxes due in November of 2024 or thereafter, and no interest or other payments were received by

[2] *See,* Request for Judicial Notice filed concurrently with Lone Oak's Motion to excuse compliance with turnover under Bankruptcy Code § 543(d) (hereinafter the "Retention Motion RJN") filed at Dkt. 42, **Exs. "H"**, **"I"**, **"J"**.

Lone Oak after December 31, 2024 (for interest due November 1, 2024). Again, Hickey offers no explanation or accounting of the Prepaid Rents which have vanished and remain unaccounted for and her sworn testimony that "All restricted funds received by the Debtor … were properly used to pay amounts to Lone Oak or a few other restricted expenses" is patently false. Hickey Declaration, ¶ 24, p. 5, ll. 20-21.

* The Debtor has no cash or sufficient income with which to make such payments as the rents to be generated by the Property starting September of 2025 are insufficient to cover the taxes, interest payments and operating expenses and are Lone Oak's cash collateral.[3]

* There is no equity in the Property to protect Movant's interests in the Property. Movant obtained not one, but two professional opinions of value of the Property in July 2025. *See*, Declarations of Darren Kuiper and Reuben Martinez in support of Motion.[4] After reviewing the Property's characteristics and current status (unentitled) both concluded the current "As-Is" value of the Property is approximately $9,000,000.00. Against which the total to pay off Movant's lien as of July 31, 2025, is no less than $11,513,717.69 and the total of all debts secured by the Property is $14,220,717.69.[5]

* More importantly, Hickey's Declaration is completely silent on the current, "as-is" value of the Property. The Hickey Declaration is utterly inadmissible to establish a purported written appraisal of the Property "As-If" completed based upon hearsay, a lack of foundation and lack of documentary evidence. Hickey Declaration, p. 10, ll. 16-21.

---

[3] *See,* Request for Judicial Notice filed concurrently with Lone Oak's Motion at Dkt. 51 (hereinafter the "Motion RJN"), **Ex. "F"**, p. 89, ¶ 27 (1)-(4).

[4] Motion, p. 30, ll. 11-14, and p. 33, ll. 11-15, respectively.

[5] Any dispute the Debtor has with the junior lienholder's claim of Aminam is irrelevant to Lone Oak's Motion. The Debtor has not challenged Aminam's claim or lien or provided anything other than Hickey's unsupported statements regarding the amounts owed under the recorded Deed of Trust which Hickey herself signed before a notary public. Motion RJN, **Ex. "E"**, p. 85-86.

* The Property is also not necessary to an effective reorganization and Debtor and Hickey have failed to provide any facts that establish a reasonable possibility of effective reorganization within a reasonable time. The Debtor has the sole burden on all such issues. 11 U.S.C. § 362(g)(2).

Accordingly, it is respectfully requested that this Court grant Lone Oak relief from the automatic stay to proceed with and complete its pending foreclosure sale of the Property and to enforce any other rights and remedies attendant thereto against the Property.

## III.

## DISCUSSION

### A. The Motion Should Be Granted Under Section 362(d)(1) for a Lack of Adequate Protection

The Objection first misstates the evidence supporting Lone Oak's Motion. The Objection states: "Based upon Loan(sic) Oak's brokers evaluations, Loan(sic) Oak has an equity cushion in the property." Objection, p. 7, ll. 27-28. As stated above, both professionals concluded that the Property's "as-is" value is approximately $9,000,000.00. Declarations of Darren Kuiper, p. 30, ll. 11-14 and Reuben Martinez, p. 33, ll. 11-15, filed in support of Motion. The Objection offers no admissible evidence of the Property's value and no evidence at all of its current "as is" value. The evidence establishes that there is no equity in the Property from which adequate protection may be sought.[6]

Secondly, the Objection asserts the incorrect legal standards by which adequate protection is evaluated. The Objection asserts that a secured creditor must demonstrate that the property is declining in value. Objection, p. 7, ll. 17-21. It is not the secured creditor's burden to show that its collateral is declining in value, but rather, pursuant to Code § 362(g), it is the debtor's burden of proof to show that the collateral is not declining in

[6] The unrefuted testimony of Jame Rothstein establishes that, as of July 31, 2025, Lone Oak's debt exceeded $11,513,000. Declaration of James Rothstein, ¶ 26, Motion, p. 27, ll. 2-15.

value. Here, the Debtor offers no evidence whatsoever on the issue of whether the Property is declining in value. Additionally, it is Lone Oak's interest in the Property that must be adequately protected from loss, decline or diminution in value. Code § 362(d)(1); *Matter of McGaughey*, 24 F.3d 904, 906–07 (7th Cir. 1994) ("Such hearings are …strictly limited to an examination of the adequacy of protections for creditors' interests and other equitable considerations.(citations omitted)."). Here, at a minimum, Lone Oak's interests continue to decline by reason of the accrual of real property taxes accruing against the Property with interest thereon at the rate of eighteen (18%) per annum and the need to advance additional costs for insurance, maintenance and the receiver for the Property.

**B. <u>The Motion Should Be Granted Under Section 362(d)(1) for Bad Faith</u>**

The sum total of the Objection's response to the Motion regarding the Debtor's and Hickey's lack of good faith consists of less than one line: "no evidence presented by Loan(sic) Oak that… the Debtor's Chapter 11 was filed in bad faith." *Id.,* p. 8, ll. 17-18. Absent is any response to the facts asserted in the Motion including:

* The Debtor failed to pay real property taxes in due November 1, 2024 and April 1, 2025 incurring penalties and interest thereon;

* The Debtor failed to make any payment for interest accruing December 1, 2024 (due January 1, 2025) and thereafter;

* The Debtor and Hickey utterly failed to respond to requests from the court appointed receiver or to the OSC issued by the State Court directing them to provide an explanation and accounting of the Prepaid Rents supported by "up to date documentation";[7]

* The Receiver's report filed in the State Court found the "**purported 'accounting' is entirely unsatisfactory and the June 12, 2025 hearing remains necessary because [Debtor] has continued to defy the Court's orders.**" (Emphasis in original). The Receiver continued: "No actual accounting was presented, and Defendant's

[7] Retention Motion, RJN, **<u>Ex. "H"</u>**.

Declaration largely reiterates prior arguments and attaches previously-provided exhibits, none of which directly address the disposition of the Prepaid Rents. **The only novel evidence presented appears to confirm that at least $79,000 of the Prepaid Rents was directly transferred to Defendant's manager** (Hickey). (Footnote omitted) (Emphasis added);"[8]

* The State Court was prepared to grant the receiver's OSC and order the Debtor and Hickey to either turnover the Prepaid Rents or repay the Prepaid Rents to the receiver immediately before the case was commenced;[9]

* It is clear that Hickey caused the Debtor to file its voluntary petition to avoid having to return or repay the Prepaid Rents;

* The Debtor had no operating income for all of 2025[10]; Even looking towards the $45,000.00 of Rents that finally came due again in September, these are insufficient to pay for operating expenses, real property taxes and any interest payments to Lone Oak; Monthly taxes and interest at the non-default rate on Lone Oak's secured claim alone totals at least $83,089.79 and does not include operating expenses or any payment to Aminam on account of its junior lien;

* The Debtor's Schedules and SOFA are inherently false, including the value of the Property and the complete omission of any reference to the $415,000 Hickey absconded with within the year preceding the filing; The Debtor listed no assets besides the Property, a disputed claim against the County of San Francisco and $24.39 in a bank account and the only unsecured creditors are the Debtor's prior attorneys; The Debtor's Statement of Financial Affairs lists no income in 2025 and no payments within 90 days to creditors or within 1 year of the petition to insiders or any transfers of money or property outside of the ordinary course of business; and the Debtor purposely failed to designate its case as a

---

[8] Retention Motion RJN, **Ex. "I"**.

[9] Retention Motion, Wyche Decl., p. 34, at ¶ 15.

[10] Motion RJN, **Ex. "B"**, p. 18.

single asset real estate case (Section 101(51B)) as required by Code § 301 and F.R.B.P. Rule 1002.

After a movant has established a prima facie case of cause, the debtor has the burden of proving the "good faith" element is met. *In re Sydnor*, 431 B.R. 584, 590-591 (Bankr. D. Md. 2010). The standard of proof is by preponderance of the evidence. *In re Compscape Telecommunications, Inc.*, 423 B.R. 816, 830 (Bankr. S.D. Ohio 2010). Here, the Debtor has failed to present any evidence rebutting the lack of good faith established in the Motion.

**C. <u>The Motion Should Be Granted Under Section 362(d)(2)</u>**

Relief from the stay should also be granted under Section 362(d)(2). The Debtor does not have any equity in the Property. The equity calculation established that Debtor does not have any equity in the Property, as the total payoff exceeds the current value of the Property substantially. *See, In re Bialac*, 712 F.2d 426, 432 (9th Cir. 1983); *Matter of Sutton*, 904 F.2d 327, 330 (5th Cir. 1990). Thus, Movant has met the burden to demonstrate that Debtor does not have any equity in the Property and Debtor has offered no evidence whatsoever on the Property's current value.

The Property is also not necessary for effective reorganization as the Debtor has offered no evidence or even the hint of reasonably possible effective reorganization within a reasonable time. 11 U.S.C. § 362(g)(2). *In re Albany Partners, Ltd.*, 749 F.2d 670, 673 (11th Cir. 1984) ("For property to be 'necessary to an effective reorganization' of the debtor, within the meaning of [Code] § 362(d)(2)(B), it must be demonstrated that an effective reorganization is realistically possible; the mere fact that the property is indispensable to the debtor's survival is insufficient"). *Id.,* fn 7. Whether the Property is "necessary to an effective reorganization" under § 362(d)(2)(B) turns on whether there is a realistic likelihood of a plan of reorganization within a reasonable period of time. *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375 (1988).

Here, the Debtor offers no evidence of any plan of reorganization that would be

effective or confirmable. Moreover, the Debtor admits that any such reorganization is not possible in a reasonable period of time. In her Declaration, Hickey confirms this fact by stating:

"The Debtor is in the business of developing property, not acquiring and holding property for income purposes and the Debtor's business is to make money from developing property, not collecting rents." Hickey Declaration, ¶ 6, p. 2, ll. 17-21;

"The only reason the Seller/Tenant is still in physical possession of the development site is because they requested that the Buyer/Debtor allow them to maintain possession of the site after the close of sale escrow until Buyer/Debtor was able to start construction on a new residential development on the site." Hickey Declaration, ¶ 9, p. 2, ll. 27-3;

"The Debtor's plan which has not changed, …, is to keep the holdover seller/tenant in place until it is ready to start construction." Hickey Declaration, ¶ 26, p. 5, ll. 26-27.

It is the Debtor's burden to show that it has realistic prospect of effecting a plan of reorganization within a reasonable time. In the absence thereof, creditors were entitled to relief from automatic stay. Here, Hickey provides no timeframe or any other information on if or when the Property will be ready for construction. There is also no evidence whatsoever of what the costs, expenses and steps to reach that point in time might be. It cannot be argued that the Debtor has provided any evidence of a reasonable possibility of a successful reorganization within a reasonable time." *Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., supra.*

## IV.

## CONCLUSION

For all the reasons set forth in the Motion and herein, Lone Oak submits that an order should be entered:

(1) Terminating the automatic stay pursuant to 11 U.S.C. § 362 allowing Movant to immediately proceed with and complete any and all contractual and statutory remedies incident to the security interest held under its Note and Deed of Trust in the Property;

(2) That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived;

(3) Granting Movant leave to foreclose on the Property and to enforce the security interest under the Note and Deed of Trust, including any action necessary to obtain possession of the Property; and

(4) Granting such other and further relief as is deemed just and proper.

DATED: September 16, 2025

WOLF, RIFKIN, SHAPIRO,
SCHULMAN & RABKIN, LLP

By: *_/s/ Simon Aron_*
SIMON ARON
Attorneys for Secured Creditor, Lone Oak Fund, LLC, a California limited liability company

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2025, a true and correct copy of **REPLY TO OBJECTION TO MOTION OF SECURED CREDITOR LOAN OAK FUND, LLC FOR RELIEF FROM THE AUTOMATIC STAY** was served via the United States District Court CM/ECF system and/or electronic mail on all parties or persons requiring notice:

- SIMON ARON saron@wrslawyers.com
- CHAPTER 11 - RN USTPRegion17.RE.ECF@usdoj.gov
- J CRAIG DEMETRAS mail@demetras-oneill.com, jcd@demetraslaw.com
- ELSA M. HOROWITZ ehorowitz@wrslawyers.com, jlee@wrslawyers.com
- ROYI MOAS rmoas@wrslawyers.com, mshield@wrslawyers.com
- U.S. TRUSTEE - RN - 11 USTPRegion17.RE.ECF@usdoj.gov
- JARED A. DAY jared.a.day@usdoj.gov

By Jean Lee

Jean Lee, an Employee of
WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP